J. L. NORIE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

COAST CARTON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1813, 2049.   Promulgated April 27, 1944.

*Meredith M. Daubin, Esq.*, for the petitioner.
*Wilford H. Payne, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: It does not appear whether respondent determined the deficiencies against the petitioner upon the ground that it was a corporation *de jure* or *de facto*, or an association taxable as a corporation. Upon brief, petitioner argues, in substance, that, upon the expiration of the charter of the Coast Carton Co. in 1929, the corporation ceased to exist for all purposes, and that thereafter J. L. Norie, as sole stockholder, did not form 'an association with any person to conduct petitioner's business. Upon brief, respondent contends that petitioner is taxable as a corporation or an association. He relies principally upon the taxability of petitioner as an association, upon the theory that the status of the corporation in the taxable year under state law is immaterial in this proceeding. In view of the position of the parties and lack of difference in rates of taxation of corporations and associations, there is no need to determine whether petitioner was a *de jure* or *de facto* corporation in 1939. See *John Crocker*, 32 B. T. A. 861; affd.; 84 Fed. (2d) 64; *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110; *Wholesalers Adjustment Co.* v. *Commissioner*, 88 Fed. (2d) 156; *Calvin Zimmerman*, 31 B. T. A. 754.

The term "corporation" in the Revenue Act of 1938 includes associations. Sec. 901 (a) (2). Petitioner argues that no body of persons agreed to become associated for the operation of its business after the expiration of the corporation's charter and, accordingly, that we must find under the guiding principles set forth in *Hecht* v. *Malley*, 265 U. S. 144, and *Morrissey* v. *Commissioner*, 296 U. S. 344, that it was not an association, but a sole proprietorship. The contention is predicated upon the theory that J. L. Norie, as the sole stockholder of the corporation, was the owner of petitioner's business. The record fails to prove such a premise for the argument.

J. L. Norie testified that he never disposed of any of his stock, the 31 shares, 10 each to his wife and daughter, and 11 to his son, having been transferred in 1924, for no purpose other than to qualify them to serve as officers of the corporation.

The statutes of Washington provide that the powers of corporations shall be exercised by a board of not less than two trustees, who shall be stockholders. Sec. 3812, vol. 5, Remington's Revised Statutes of Washington. Petitioner does not cite any state statute requiring other

officers to be stockholders, and we find none. The record does not show whether the corporation ever had duly elected trustees. Apparently the stock was transferred for reasons other than to qualify the stockholders as officers of the corporation. His testimony is inconsistent with other evidence in the record. As late as 1939 he represented to a bank in one application for credit that he and members of his family owned all of the corporation's outstanding stock, and in another application that he owned practically all of the stock. The certificate issued in favor of J. L. Norie, Jr., was among the assets of his estate which were set aside to his widow by a court decree issued in November 1939. Furthermore, the witness, acting as administrator of the estate of his wife, listed 522 out of 543 shares of outstanding stock of the corporation as community property of the estate. The remaining shares could be none other than those outstanding in the names of Mary E. Banks and James L. Norie, Jr. This action of J. L. Norie constitutes recognition by him that the stock outstanding in the names of his daughter and deceased son was not owned by him. Martha K. Norie died intestate in 1937. Her one-half of the community estate, which included the stock outstanding in the name of her husband, subject to community debts, descended in equal shares to her two children both of whom were living at the time of her death. Remington's Revised Statutes of Washington, vol. 3, sec. 1342. In 1937 J. L. Norie acquired by assignment the interest of his son and daughter in the estate of their deceased mother. The estate has not been settled. We accept this documentary evidence to establish ownership of the corporate stock rather than the testimony of J. L. Norie. This conclusion is not inconsistent with our finding from testimony of J. L. Norie that he has at all times had possession of the stock certificates. He held them, not as the owner thereof, but as a custodian for the owners.

Accordingly, the stock issued by the corporation was held during 1939, not by one individual, as contended by petitioner, but by three persons and an estate in process of administration. The ownership of petitioner in 1939 was evidenced by those certificates. This conclusion renders it unnecessary to decide whether a business owned by one individual may be taxed as an association. There is authority, however, for holding that sole ownership is not fatal to such view. *Lombard Trustees, Ltd.* v. *Commissioner*, 136 Fed. (2d) 22. The stock certificates here were as transferable as the "expectancy fractions" evidencing ownership in that case.

The absence of a formal agreement among the shareholders entered into for the express purpose of operating the business of the corporation after the expiration of its charter is not decisive under the peculiar facts of the case. The business of petitioner was conducted after 1929

without knowledge that the corporation's charter had expired, and during that period the former stockholders at least acted under the assumption that whatever agreement or authority necessary to give life to and perpetuate the existence of the corporation under state statute was still in full force and effect. No franchise taxes were paid after 1929. The failure of J. L. Norie, the corporation's principal stockholder, president, and manager, to have the corporation pay the taxes tends to indicate intention on his part to operate the business in the same manner as a corporation. He and the other stockholders should have known that the charter had expired and are in no position to complain if an organization in all respects like a *de jure* corporation is used by them to transact business and called upon to pay a tax on its earnings. Until 1929 they transacted business in corporate form and then, at a time when they should have known that the corporation's charter had expired, elected, in effect, by inaction, to continue the business in the same manner.

In *J. C. Carlson*, 27 B. T. A. 93, involving income tax liability for 1925, a corporation in 1914 conveyed its assets in trust, in dissolution proceedings, to three of its stockholders. The trustees continued, without change, the business conducted by the corporation prior to the transfer. We held that the continuation of the business by the trustees beyond a reasonable time after steps were taken to dissolve the corporation created an association. No agreement was entered into for conducting the business after a reasonable time for dissolution. Here, the shareholders permitted the corporation's business to continue after the charter expired, without any change in the manner of conducting its activities. The result of the failure of the former stockholders to recognize the altered situation was no different here than it was there.

In *Roe Stephens Mfg. Co.*, 12 B. T. A. 1254, the corporation's charter expired in May 1916, with knowledge of its stockholders. Pending the organization in January 1919 of a new corporation to take over the assets, the business of the old corporation was conducted without change. We held that the shareholders did business in 1917 and 1918 as an association, contrary to their belief that they were partners.

In *Rockwood* v. *United States*, 38 Fed. (2d) 707 (Ct. Cls.), the corporation's charter expired in 1917 and was never extended or renewed. The corporation's business was carried on as usual by its two stockholders throughout 1918 and a corporate return was filed for that year. The evidence did not show that the former stockholders knew prior to 1927 that the charter had expired. The surviving stockholder filed a claim for refund of taxes paid for 1918, alleging that, the corporation's charter having expired in 1917, the corporation was not in existence in 1918; that the shareholders continued the

business as partners; and that the Commissioner had no authority to tax the business as a corporation or as an association. The court denied the refund on two grounds—first, that the plaintiff was estopped to deny that the company was not a corporation, and, second, that if the company was not taxable as a corporation, it was taxable as an association.

The Treasury Department has power to provide rules for administration of the statute. *Morrissey* v. *Commissioner, supra.* Article 1502 of Regulations 62, promulgated under the Revenue Act of 1921, provides:

> * * * A corporation which has ceased to exist in contemplation of law but continues its business in corporate form is an association or corporation within the meaning of section 2, * * *

Like regulations were promulgated under the Revenue Acts of 1924, 1926, 1928, and 1932. Subsequent regulations contain the following statement:

> * * * If the conduct of the affairs of the corporation continues after the expiration of its charter, or the termination of its existence, it becomes an association.

The obvious purpose of the regulations is to classify as an association a business conducted in corporate form after a corporation ceases to exist under statutory authority. During the period the regulations were in effect the statutory provision for taxing associations as corporations was continued without change. Such action of the Congress must be regarded as approval of the regulations. *Morrissey* v. *Commissioner, supra; John Crocker, supra,* and cases cited therein; *Marshall Heirs* v. *Commissioner,* 111 Fed. (2d) 935. The regulations cover corporations generally, and do not make the classification depend upon the number of stockholders or an agreement for continuing the business.

Petitioner was an association during 1939 within the meaning of the statute and is taxable as a corporation.

As grounds for sustaining his determination of fraud, respondent relies upon the deduction in the return for 1939 of a total of $2,627 for compensation paid to J. L. Norie, Jr., and his widow, and to Mary E. Banks, with knowledge that they performed no services for the payments. Petitioner does not deny the payments and admits that the individuals performed no services for it during the period for which the salaries were paid. It answers the charge of fraud by pointing to testimony of J. L. Norie that throughout 1939 J. L. Norie, Jr., was entitled to salary under leave of absence granted to him and that the remaining item of $47 paid to Mary E. Banks, his daughter, was part of his salary.

We are of the opinion that respondent has sustained his burden

under the issue. The statute limits deductions for salaries to amounts paid as compensation for personal services actually rendered. Sec. 23 (a) (1), Revenue Act of 1938.[1] The testimony of J. L. Norie, an interested party, that his son had the status of an employee on leave of absence with pay for a period of about twenty months is contrary to other evidence and will not support a finding of fact to that effect. He testified that he arranged with his son in 1938 that "his salary was to go on, and his wife was to have the recompense for her maintenance." The son left Seattle in January 1938, ostensibly on a business trip, but for the real purpose, known only to his wife, of leaving the country for a period of time not disclosed in the record. No evidence was offered to show how long petitioner expected J. L. Norie, Jr., to be absent on business. The necessity for granting leave of absence to conduct an ordinary business activity is not apparent, and in a case such as this, requires some explanation. There is none in the record. The salary was paid throughout 1938, after J. L. Norie knew that his son, instead of being absent conducting business for petitioner, was in military service abroad. In an ordinary case, action of that sort on the part of an employee would be considered grounds for terminating the services of the employee; if not, a new contract of employment. Instead, the salary of the employee here was continued thereafter for about twenty months, including four months after it was known that the employee had been killed in April 1938, a few months after he left Seattle. If salary was payable after being informed of the death of the employee, it should have been paid to his estate.

Other testimony of J. L. Norie is that the checks drawn after being notified in June 1939 of his son's death fourteen months prior thereto were issued "because his family had to be maintained." This and other testimony contains the real reason for issuing the checks. During the time she received and cashed the checks, Mrs. James L. Norie, Jr., had no other means of supporting herself and two minor children. This was known to J. L. Norie. The petitioner provided the necessary maintenance money without consideration, so long as it was needed, and continued to issue checks, without delivering them, long after its president and manager knew they were not needed or wanted to sup-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
    In computing net income there shall be allowed as deductions:
    (a) EXPENSES.—
    (1) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

port the family of his deceased son. The checks were gratuitous contributions of petitioner for the support of the family of a former employee and not, as petitioner represented in the books, and return for 1939, compensation of an officer for services actually rendered.

A somewhat similar situation prevailed respecting the payment of $47 in 1939 to Mary E. Banks, and deducted as compensation for services actually rendered. Petitioner seeks to justify the deduction upon the ground that it was part of the salary of J. L. Norie.

Prior to the death of his wife in 1937, J. L. Norie had $47 of his salary each week deposited to her credit to operate their home. It does not appear how the payments were recorded on petitioner's books or reported in income tax returns. After his wife died he made arrangements to have his daughter keep house for him and thereafter caused petitioner to make the payments to her. The payments of $47 a week in 1938, totaling $2,444, were claimed as a deduction in the return filed for that year as compensation to officers who had devoted all of their time to the affairs of petitioner. Of the checks issued for a like amount each week in 1939 through October 27, only one was cashed, and the other checks were canceled. J. L. Norie first testified that the payment was made to her for the operation of his home and then, upon being asked whether the payment, having been charged to labor on petitioner's books, in effect, was his or her salary, testified, "It was my salary, I guess." Later he testified that "a number of years ago" he was voted a salary of $180 a week, that he did not always draw it, and that "it is very possible that that [amount paid to Mary E. Banks] was a part of my authorized salary." The amount of $9,889 deducted as salaries paid to J. L. Norie and Mary E. Banks in 1938 is $129 in excess of $180 a week. Accordingly, to the extent of at least $129, the payments in 1938 were not salary of J. L. Norie. J. L. Norie did practically all of the bookkeeping for petitioner, directed all of its activities, and should have been in a position to testify without equivocation concerning the real purpose of the payments. It is not contended that a mistake was made. The amount, like the payments to his son and daughter-in-law, was represented to be salary for services rendered, knowing that no services had been rendered. Representations of that sort disclose a fradulent intent. *Allegheny Amusement Co.*, 37 B. T. A. 12. We hold that the deficiency is in part due to fraud with intent to evade tax, and that 50 percent of the amount of the deficiency was properly added by the Commissoner, under section 293 (b) of the Internal Revenue Code.

*Decision will be entered for the petitioner in Docket No. 1813, and for the respondent in Docket No. 2043.*