COAST CARTON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JAMES L. NORIE AND SARAH MAY NORIE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11221, 11222. Promulgated May 18, 1948.

*Meredith M. Daubin, Esq.*, for the petitioners.
*Douglas L. Barnes, Esq.*, for the respondent.

896

OPINION.

Harlan, *Judge*: The respondent determined that the Coast Carton Co. is an association taxable as a corporation for the calendar years 1940 and 1941. He contends that the decision here is controlled by our decision in *Coast Carton Co.* v. *Commissioner* (1944), 3 T. C. 676; affd., 149 Fed. (2d) 739, in which it was held that petitioner was an association during 1939 within the meaning of the statute, and taxable as a corporation. He argues that the evidence in this case is not substantially different from the evidence in the prior case and that, therefore, that case is *res judicata* here.

If the doctrine of *res judicata* is properly applicable, the case may be disposed of without reaching the merits of the controversy, and it would be settled and adjudicated that in the years subsequent to 1939 petitioner Coast Carton Co. is an association taxable as a corporation. Outside of certain changes, which we consider more carefully hereinafter and which the Commissioner contends are not material, the evidence received or available in the instant case was either offered or available in the prior case.

In *Commissioner* v. *Sunnen*, 333 U. S. 591, the Court reviewed the doctrine of *res judicata*[1] and discussed at length those

---

[1] * * * The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell* v. *County of Sac*, 94 U. S. 351, 352. The judgment puts an end to the cause of action which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud. See von Moschzisker, "Res Judicata," 38 Yale L. J. 299; Restatement of the Law of Judgments §§ 47, 48.

But where the second action between the same parties is upon a different cause or

concepts applicable to the Federal income tax field. The opinion points out that income taxes are levied on an annual basis and that each year is the origin of a new liability and a new cause of action. Where a claim of liability, or of nonliability, is litigated a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim (and the same tax years), but if the latter proceeding is concerned with a claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually *presented* and *determined* in the first suit. The Court emphasizes that "collateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability." The opinion states:

A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion. Compare *United States* v. *Stone & Downer Co.*, 274 U. S. 225, 235–236. Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel. That principle is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.

It clearly appears that where different taxable years are involved collateral estoppel must be limited to cases where the situation squares exactly with that obtaining in the former case and the controlling facts and applicable legal rules remain unchanged. For example, a judgment as to the basis of depreciation on a certain building would be binding in a suit involving a subsequent tax year where no change in either the facts or the law has occurred. But if the former judgment involved a status that may well change from year to year and there has been a change in the situation between the time of the first judgment and the second, the prior judgment is not conclusive. Cf. *State Farm Mutual Insurance Co.* v. *Duel*, 324 U. S. 154–162. Moreover, "a judicial declaration of either a state court or a Federal court intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable."

demand, the principle of *res judicata* is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Cromwell* v. *County of Sac, supra,* 353. And see *Russell* v. *Place,* 94 U. S. 606; *Southern Pacific R. Co.* v. *United States,* 168 U. S. 1, 48; *Mercoid Corp.* v. *Mid-Continent Co.,* 320 U. S. 661, 671.

*Blair* v. *Commissioner*, 300 U. S. 5–9; *Hendricksen* v. *Seward*, 135 Fed. (2d) 986.

Whether the Coast Carton Co. is doing business as an association is not based on an historical document such as a bond or a lease, cf. *Tait* v. *Western Maryland R. Co.*, 289 U. S. 620, but is based on conditions that might change through human intervention and become quite different in subsequent years. Cf. *Grandview Dairy, Inc.* v. *Jones*, 157 Fed. (2d) 5; *Hendricksen* v. *Seward, supra; Engineers Club of Philadelphia* v. *United States* (Ct. Cls., 1944), 42 Fed. Supp. 182, certiorari denied, 316 U. S. 700. A comparison of the record before us with that of the former case convinces us that is what has occurred. In the former case we found that James L. Norie, Sr., was actively operating the business. He was president, manager, treasurer, and a director of the corporation and did practically all the bookkeeping. In practical effect it was a one-man business. About 1924 he caused certificates for 10 shares of stock to be issued to his wife, 10 shares to his daughter and 11 shares to his son, which he claimed were qualifying shares, to enable them to be officers of the corporation. These certificates were never delivered and no demand was ever made for them. No meetings of directors or stockholders were held after 1926. The charter of the corporation expired in 1929 and was never renewed. Norie did not know that the charter had expired and he continued operating the business as a corporation. Financial reports were made as a corporation and signed by James L. Norie, treasurer, in which the stock was represented as "owned in the family"; corporate income tax returns were filed; supplies were purchased, bank loans were made, and general business dealings were conducted during 1939, the tax year there in question, in the name of the Coast Carton Co., a corporation.

In the instant case it appears that in 1940 James L. Norie learned that the charter of the Coast Carton Co. had expired in 1929 and that the business was not incorporated. He immediately took steps to erase all corporate activity and thereafter held himself out as an individual doing business as Coast Carton Co. Corporate evidences were removed from the door of the building and from the stationery; financial reports were made by him as owner doing business under the name of Coast Carton Co. and income tax returns were filed by him as an individual doing business as Coast Carton Co. Moreover, after the judgment in *Coast Carton Co., supra,* and before the proceedings in this case, there intervened the judgment in *James L. Norie* v. *Belle Reeves, et al.,* in which the ownership of the business known as Coast Carton Co. was judicially determined.

*Res judicata* is no defense where (as here) between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation. *Blair* v. *Com-*

*missioner, supra.* If the first judgment requires the taxpayer to go on reporting income as an association, taxable as a corporation, he may conceivably be put at a disadvantage with his competitors and suffer resulting inequities. Obviously, the inequity may work both ways, as pointed out in *United States* v. *Stone & Downer Co.*, 274 U. S. 225. In our opinion, the doctrine of estoppel by judgment does not require this Court to become so entangled in the web of a prior decision that it would be unable to do justice to a taxpayer in a subsequent year, and, therefore, estoppel by judgment is not applicable here. *Commissioner* v. *Sunnen, supra; State Farm Insurance Co.* v. *Duel, supra; Blair* v. *Commissioner, supra; United States* v. *Stone & Downer Co., supra.*

We turn then to a consideration of the case on its merits. Although we find here no organized community of effort for the doing of business which in any way remotely resembles a corporation in organization or function, the respondent contends that the petitioner should be held to be an association under the provisions of the regulations which have remained substantially the same since they were promulgated under the Revenue Act of 1921.[2] The particular provision on which he relies is, "If the conduct of the affairs of a corporation continues after the expiration of its charter, or the termination of its existence, it becomes an association." A similar contention was made in *Knoxville Truck Sales & Service, Inc.*, 10 T. C. 616, where the charter of a corporation had been revoked for nonpayment of taxes and thereafter the sole owner, who did not know of the revocation, continued to operate the business under its corporate name. In that case we said:

Here, the petitioner was in fact and in law a corporation for all purposes until its charter was revoked. Neither before nor after that time did it have the essential characteristics of an association. During its corporate life, as well as afterwards, it was under the sole ownership, management, and control of H. R. Thornton. The Commissioner's regulation, section 19.3797-2, above, to the effect that if the conduct of the affairs of a corporation continues after the expiration of its charter it becomes an association, can be sustained only if it is restricted to the usual type of business corporation which itself embodies

---

[2] SEC. 19.3797-2 [Regulations 103]. ASSOCIATION.—The term "association" is not used in the Internal Revenue Code in any narrow or technical sense. It includes any organization, created for the transaction of designated affairs, or the attainment of some object, which, like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. It is immaterial whether such organization is created by an agreement, a declaration of trust, a statute, or otherwise. It includes a voluntary association, a joint-stock association, or company, a "business" trust, a "Massachusetts" trust, a "common law" trust, an "investment" trust (whether of the fixed or the management type), an interinsurance exchange operating through an attorney in fact, a partnership association, and any other type of organization (by whatever name known) which is not, within the meaning of the Code, a trust or an estate, or a partnership. If the conduct of the affairs of a corporation continues after the expiration of its charter, or the termination of its existence it becomes an association.

the essential features of an association. Otherwise, a business once incorporated might forever afterwards be classified as an association and taxed as a corporation, regardless of its ownership and methods of operation.

In *Morrissey* v. *Commissioner*, 296 U. S. 344, the Court said: " 'Association' implies associates. It implies the entering into a joint enterprise, and, as the applicable regulation imports, an enterprise for the transaction of business." This is not the characteristic of a business owned, controlled and operated by a single individual, in which there is no evidence whatever of corporate activity.

The instant case is not an operating trust as in *Lombard Trustees, Ltd.* v. *Commissioner* (cited by respondent), 136 Fed. (2d) 22. Nor does it have any resemblance to one. It is in all respects a one-man business, controlled and operated by James L. Norie, and, even if it were conceded (which it is not) that a small interest was owned by the daughter and daughter-in-law, that fact would not be controlling. The test of an association is not to be found in the mere formal evidence of interests. *Morrissey* v. *Commissioner*, *supra*. It is to be found in the manner in which an enterprise is organized and being carried on for the purpose of doing business and sharing its gains—which may be regarded as making it analogous to a corporate organization. The salient features of an association, as set out in the *Morrissey* case, are: An entity holding the title to the property embarked in the corporate undertaking; trustees as a controlling body, with provisions for succession; central management by trustees or representatives of beneficial owners; continuity uninterrupted by death among beneficial owners; means for transfer of beneficial interests and introducing new participants without affecting continuity; and the limitation of personal liability of the participants to the property embarked in the undertaking. As a practical matter, none of these tests apply to the case before us. There is no evidence of any corporate meetings, any distribution of profits, any representative management, any provisions of continuity of the business, or any limitation of liability of the participants in the taxable years before us. Admittedly, the old corporation had ceased to exist, and it was no longer operated as a corporation. James L. Norie, having learned that the corporation was defunct, operated the business and filed financial reports and income tax returns as an individual proprietor, doing business as Coast Carton Co. In this changed situation there is not the slightest resemblance to corporate organization or activity in the conduct of the business.

It is true that the property on which the plant of the Coast Carton Co. was situated was carried in the name of the Coast Carton Co. during the years when Norie thought the corporation was in existence. But it also appears that during this time the mortgage on the property was reduced from $12,500 to $2,000, which latter amount was being paid

off in 1941 by petitioner James L. Norie at the rate of $50 per month, plus interest.

We have observed that the mere ownership of minor interests in the business by the daughter and the daughter-in-law of James L. Norie would not of itself be determinative of the issue here. But the record before us convinces us, and we have found as a fact, that James L. Norie was the sole owner in the taxable years before us of the business conducted by him under the name of the Coast Carton Co.

In his income tax returns for the years before us, James L. Norie represented, under oath, that he was the sole owner of the business.

A prospective purchaser for the Coast Carton Co. testified that in 1939, when he made initial inquiries pertaining to the purchase of the Coast Carton Co. of James L. Norie, the conversation between these two was on the basis of James L. Norie being the sole owner of the company. Shortly thereafter the prospective purchaser inquired of Esther Brockelbank, the former wife of James L. Norie, Jr., deceased, whether she had any interest in the Coast Carton Co. as a stockholder, and she disclaimed any such interest. He also inquired of Mary Norie Banks, the daughter of James L. Norie, as to whether or not she had any ownership in Coast Carton Co. and her answer was also in the negative. This same witness testified that in the fall of 1940, after James L. Norie, Sr., had discovered that the Coast Carton Co. was not a corporation, the letterhead of the company was changed from what it had been in the preceding years. He does not say just what this change was, but he does say that the name of the corporation was removed from the door. All of this testimony was brought out by counsel for the petitioner by cross-examination of a witness subpoenaed by the Commissioner and without any objection from Commissioner's counsel.

After the proceeding and judgment in *Coast Carton Co., supra*, and before the proceeding in the instant case, there intervened the judgment of the Superior Court of Washington in and for King County in *James L. Norie* v. *Belle Reeves, et al.* In that case it was found and adjudged that the Coast Carton Co., a Washington corporation, incorporated September 8, 1904, ceased to exist as a corporation, either "*de jure*" or "*de facto*," on September 7, 1929, on which date the community consisting of James L. Norie and Martha K. Norie, his wife, owned all the capital stock and became the owner of all the assets of the corporation; that the listing of 522 shares of stock of Coast Carton Co. in the estate of Martha Kaye Norie and the listing of 11 shares of stock of Coast Carton Co. in the inventory of the estate of James L. Norie, Jr., were both in error; and that from July 26, 1937, James L. Norie became the sole owner of all the business conducted under the name of the Coast Carton Co. and became solely liable for debts and obligations of such business.

While we do not regard the ownership of minor interests as controlling here in view of the record in this case, we are of the opinion that it is settled by the decision in the *Reeves* case that the shares issued to members of Norie's family in 1924 were merely qualifying shares; that the ownership of the corporation (and after its dissolution the business) remained in Norie and his wife as community property until the death of the wife in 1937; and that upon the assignment by the children of all their right, title, and interest in their mother's estate to James L. Norie on July 26, 1937, the ownership of the entire business was in James L. Norie. *Sunnen* v. *Commissioner, supra; Blair* v. *United States, supra.*

The facts surrounding the *Blair* case are peculiarly applicable to the case at bar. In the *Blair* case the Board of Tax Appeals had held that the trust involved was a spendthrift trust, with the tax consequence that the income thereof was taxable to Blair for the year 1923. On March 5, 1934, the appellate court of the State of Illinois decided that the trust involved was not a spendthrift trust. On January 3, 1935, the Board of Tax Appeals had before it the determination of Blair's liability for the income from the trust for the years 1924, 1925, 1926, and 1929. The Board of Tax Appeals determined that the decision of the state court in Illinois, rendered in 1934, controlled the tax status of the petitioner for the years 1924, 1925, 1926, and 1929 in spite of the prior decision of the Board of Tax Appeals for the year 1923. This decision was approved by the Supreme Court, and by this decision the judgment of the state court was accepted as affecting the tax status of a taxpayer during years prior to the rendition of the decision in the state court. We have the same question before us pertaining to a decision of the state court of Washington rendered in 1947 which is in conflict with the determination of this Court in *Coast Carton Co.*, 3 T. C. 676, and would seem to be controlling of our conclusions in the case at bar.

Usually state law determines the creation and existence of legal relationships and their attendant rights, duties, obligations, and incidents. The extent to which these legal relationships are recognized by the Federal revenue laws has often been at issue in the courts. It is generally held that the power of Congress to tax is not subject to state control, but that in the exercise of its taxing power Congress may impose its own criteria. See *Helvering* v. *Stuart,* 317 U. S. 154. In other words, it is the intention of Congress which governs. This intention is generally recognized to provide for a uniform application of the scheme of taxation. A primary test of the extent to which legal relationships are recognized within this scheme of taxation is whether the purpose of the taxing act would be avoided or defeated by applying the state law. *Doll* v. *Commissioner,* 149 Fed. (2d) 239; certiorari denied, 326 U. S. 725. It is well settled

that ownership of property within a state is determined by state law, and that tax liability on income from capital is based on ownership and embraces the incidents of ownership, such as control or economic benefits, *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Clifford*, 309 U. S. 331. It is therefore obvious that the judgment of the state court in *Norie* v. *Reeves, et al., supra*, is determinative of the question of ownership of the business and assets of the Coast Carton Co. as between the parties, and we think it should be given full force and effect here. This case differs from *Sewell* v. *United States* (Ct. Cls.), 73 Fed. Supp. 957. Here there is no question of evasion or of giving effect to statutory provisions designed to forestall evasion, or of the taxpayer's retention of control, as there was in the *Sewell* case.

The law is concerned with the substance of things, rather than with mere form. It is possible that James L. Norie, after discovery that the Coast Carton Co. was no longer a corporation, might have taken some additional steps to clarify his tax status, but it is doubtful whether many reasonably prudent men would have done much more than he did. He notified the revenue department, changed his letterhead, and removed the corporate name from the door, and he notified the bank with which he did business. Under these circumstances, when an individual is doing everything within reason to avoid holding himself out to the public as a corporation and to avoid operation as a corporation, we can see no purpose in attempting to torture the facts in order to find that this taxpayer was operating as an "association" taxable as a corporation.

In our opinion, during the taxable years the Coast Carton Co. was an individually owned and operated business and the owner of that business, James L. Norie, was not operating it in a representative capacity. Our conclusion, therefore, is that the Coast Carton Co. was not an association taxable as a corporation during the years 1940 and 1941.

Pursuant to the stipulation of the parties, we find that there is no deficiency in Docket No. 11221, and in Docket No. 11222 there are deficiencies for the years 1940 and 1941 in the respective amounts of $1,138.34 and $3,436.61, and there are no penalties due.

Reviewed by the Court.

> *Decision will be entered according to the stipulation of the parties.*

———

DISNEY, *J.*, dissenting: I must dissent from the conclusion of the majority in this matter. I shall not dwell upon the matter of *res adjudicata*, since that is covered by the dissent of Judge Opper— though I think *res adjudicata* applies, and agree fully with that dissent.

The facts found by the majority opinion disclose that James L. Norie, as administrator, listed only 522 shares of the 543 shares of stock in the community estate of himself and his wife after her death. This shows his recognition, in accord with the transfer of 10 shares to his daughter and 11 shares to his son, that he and his wife did not own 21 shares. It is in accord too with his statement, as late as 1940, that all outstanding stock was "owned in the family," and in accord further with his statements that he was "controlling owner." It is likewise in accord with the fact that the probate court distributed the 11 shares of stock formerly held by Norie's son to his widow in lieu of homestead. In short, the record is affirmative and positive, and based upon statements made by Norie at a time when he was not interested in taxes, that he did not own all the stock. He now contends, and the majority opinion upholds him in the contention, that it was all owned by him. No transfer of the stock to him is shown since the above mentioned statements by him; and I am unable to accept an interested contention instead of disinterested statements of fact. The evidence of the witness Chadwick that the daughter and the daughter-in-law stated that they had no interest does not dispose of the interests which they actually owned according to the above disinterested statements by Norie.

The judgment of the Superior Court I consider clearly collusive under the language of *Freuler* v. *Helvering*, 291 U. S. 35, for the facts found show that the daughter and the daughter-in-law "filed answers either admitting or not controverting allegations of the complaint." The proceeding in the state court was plainly "collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax" in the language of that case.

Believing that the facts proved are contrary to the conclusions drawn therefrom, I respectfully dissent.

TURNER, LEECH, and OPPER, *JJ*., agree with this dissent.

————

OPPER, *J*., dissenting: In my view, disposition of the present proceeding conflicts not only with recognized principles of estoppel by judgment, *Cromwell* v. *County of Sac*, 94 U. S. 351, and their application in tax litigation, *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620; *The Evergreens*, 47 B. T. A. 815; affirmed in part (C. C. A., 2d Cir.), 141 Fed. (2d) 927; certiorari denied, 323 U. S. 720, but with the Supreme Court's most recent pronouncement on the subject, *Commissioner* v. *Sunnen*, 333 U. S. 591.[1] Nothing about the prior decision is shown to

---

[1] "Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding *even though the cause of action is different*. See *The Evergreens* v. *Nunan*, 141 Fed. (2d) 927." (Emphasis added.)

"have become obsolete or erroneous with time," but it remains "substantially static, factually and legally" and seems to me binding as to the "right, question or fact" there decided.

What we are now doing fails to distinguish between new evidence, which *res judicata* never yields to, and a new fact. There was no change in the latter between 1939 and 1940. If there were other owners of the business in 1939, an "issue" or "fact" which the prior decision established, there were such likewise in 1940.

The issue here is not whether petitioner was a *de facto* or a *de jure* corporation in the year 1940, but whether, not being a corporation, it is nevertheless an association taxable as such. In the prior proceeding the opinion affirming the Tax Court (C. C. A., 9th Cir.), 149 Fed. (2d) 739, 741, decided under Treasury regulations reading "If the conduct of the affairs of a corporation continues after the expiration of its charter, or the termination of its existence, it becomes an association," that petitioner "*was an association* and was properly taxed under the provision of the tax code referring to corporations." (Emphasis added.) Thus the fact that the corporate charter had expired is not determinative of the present issue any more than it was of that already adjudicated.

Now why did the Tax Court determine in the earlier proceeding that this was an association? It was because it rejected the contention there made, which is the same as that made here, "that it was not an association, but a sole proprietorship. The contention is predicated upon the theory that J. L. Norie, as the sole stockholder of the corporation, was the owner of petitioner's business. The record fails to prove such a premise for the argument."

There is absolutely no evidence in this record that the conduct of petitioner's business was different in the year 1940; that, for example, it became a partnership or joint venture. The mere fact that it changed the letterhead—how does not appear—or that it removed the name from the door, does not to any extent bear on its manner of doing business. Incidentally, this was not until the close of 1940. For all that appears, there was not even this change for 365 days of the year. The real issue is the same as that in the prior proceeding— petitioner's classification as an "association" because it had "associates," and was not a sole proprietorship. On this issue nothing is produced, certainly no evidence which was not or could not have been produced in the prior proceeding.

The State Court proceeding relied on, if not collusive under the definition of the *Freuler* case,[2] in fact demonstrates not any change subsequent to our prior decision, but the reverse. The State Court found "as a fact" that after Norie acquired all of the stock as far back

---

[2] *Freuler* v. *Helvering*, 291 U. S. 35.

as the year 1926, "at no time * * * did plaintiff [Norie] dispose of *any of said stock* or create any interest therein in any other person * * *." (Emphasis added.) This is properly described as a fact. But it is diametrically contrary to the fact found in our prior decision. No authority, including the *Blair* case,[3] has decided that the intervening determination of a fact, as opposed to a question of law, in other litigation eliminates the binding quality of a prior decision when the same factual issue arises in the same court. See *The Evergreens, supra.*

It is further adjudged in the same decree that the corporation ceased to exist either *de jure* or *de facto* on September 7, 1929—ten years before the year that was in issue in the prior proceeding. But as the Court makes clear in its opinion on the appeal from this Court's decision, petitioner would be taxable as an association under the express language of the regulation precisely because it had ceased to be a *de facto* or a *de jure* corporation. Finally, the decree finds that two other proceedings before other state courts, in which accountings were approved confirming the property in others, were both "in error."

Perhaps the prior decision of this Court was also "in error"; perhaps its affirmance on appeal was also "in error." But even if that were so, it would be the kind of error which the rule of *res judicata* was designed to leave undisturbed, for it is that rule which "makes white, black; black, white; the crooked, straight; the straight crooked."

TURNER, MURDOCK, and DISNEY, *JJ.*, agree with this dissent.

---

[3] *Blair* v. *Commissioner,* 300 U. S. 5.