### DITTMAN et al. v. MYERS et al.
### No. 2931.

Court of Civil Appeals of Texas. Beaumont.
June 12, 1936.

Rehearing Denied July 1, 1936.

Mark Carter, of Goose Creek, and W. O. Dailey, of Houston, for appellants.

Kemper, Hicks & Cramer, of Houston, for appellees.

O'QUINN, Justice.

On September 24, 1934, appellee Myers brought this suit against appellants Fred Dittman, Carl Dittman, and A. E. Drew, and against J. C. Schoemaker and J. D. Hunnicutt, to recover damages for conversion of certain personal property, and for loss of earnings occasioned to appellee Myers by reason of being deprived of the

use of said property in his printing business, and for damages for wrongful levy of a distress warrant on said property, thus taking the property out of his possession, and for exemplary damages. alleging said distress levy was done for the purpose of injuring, harassing, and ruining him.

Myers alleged that on May 14, 1934, he was engaged in publishing a newspaper in the city of Goose Creek, Harris county, Tex., known as "The Democrat," and that at said time he was occupying certain premises leased from appellant Fred Dittman. That for the purpose of publishing the said paper, he had in the building where same was published certain enumerated property, tools, and apparatus, used in connection with the publishing of said paper, of the reasonable market value of $5,643. That on said date, May 14, 1934, appellants Fred Dittman and Carl Dittman, unlawfully and without just cause or excuse, and with intent to vex, injure, harass, and ruin appellee, sued out a distress warrant in the justice court of justice precinct No. 3 in Harris county, on the ground that he, appellee, was about to remove his said property from said leased premises without paying the lease hire or rent owed by him to said appellants, which was false and without foundation in fact, and that they, appellants, had a landlord's lien on said property for the payment of said unpaid rent, which was not true because all of his said property sought to be distressed for rent was exempt property. That on said May 14, 1934, appellants unlawfully and without reasonable excuse or justification caused said distress warrant to be executed and thereby took possession of said premises and the property of appellee therein, and excluded appellee from the use and possession of same, and continued to hold said property without any further legal procedure and converted same to their own use and benefit. He prayed for damages in the sum of the value of the property so distressed, $5,643, and exemplary damages in the sum of $5,000.

Defendants J. C. Schoemaker, J. D. Hunnicutt, C. B. Shannon, and A. E. Drew answered. Schoemaker was the constable who executed the distress warrant and closed up the building in which appellee had been publishing his newspaper. Hunnicutt and Shannon were on Schoemaker's official bond. Shannon died, and the suit as to him was dismissed. Carl Dittman and Drew were on the lessor Fred Dittman's bond for the distress warrant. These defendants answered by general demurrer, general denial, and specially that they should not be held for damages claimed by appellee because defendant Schoemaker, constable, acted in obedience to the distress warrant lawfully directing him to seize the property in question.

Appellants Fred Dittman and Carl Dittman answered by general demurrer, several special exceptions, and general denial, and specially denied that appellee was the owner of the property described in his petition, and specially denied that said property was of the reasonable market value alleged. They further specially answered that appellee occupied the building in which the property was situated by virtue of a written contract of date December 14, 1932, executed by appellee C. R. Myers and C. M. Cox, as lessees, and Fred Dittman, lessor, which provided, among other things, that appellee was to pay to lessor Fred Dittman the sum of $900 for rental on said building past due under the previous contract, and that said Myers was to proceed to pay off existing outstanding debts which he owed to other parties, which debts aggregated the sum of $3,000 and were secured by chattel mortgage liens on certain of the property, and that when said debts were paid by appellee, then said lessor, Fred Dittman, agreed to remit or credit the sum of $300 on said $900 past-due rent. They further specially answered that said rental contract of date December 14, 1932, provided that a rental of $50 per month was to be paid by said Myers monthly in advance; that in said contract Myers bound and obligated himself to vacate said rented premises upon failure upon his part to perform any of the provisions of said contract, and agreed that in event of such default by appellee appellant could cancel the contract and take possession of the premises; that failure to pay the monthly rental in advance should at the election of the lessor give him the right to cancel the contract upon 10 days' notice in writing. That said Myers failed to pay off the debts owing by him to other parties, and failed to pay the monthly rental for the building, wherefore lessor had the right to cancel said rental contract and take possession of the rented premises, and that lessor accordingly gave

written notice to appellee to vacate the premises more than 10 days prior to the execution of the distress warrant and the locking up of the building. They further answered that said Myers, after the distress warrant had been executed and the premises closed, requested lessor Fred Dittman not to file his petition or suit in the district court of Harris county because to do so would cause him, Myers, trouble and injure him, and that in accession to such request the petition or suit was not filed in the district court of Harris county. Other defenses were plead, but we do not think it necessary to mention them.

Appellants, in connection with their answer, filed a cross-action against appellee Myers, alleging that he was indebted to lessor Fred Dittman for past-due rent in an amount of $1,150; that lessor had a contract lien and a statutory landlord's lien on the property in said rented premises to secure the payment of said rent; that they had demanded in writing possession of said premises, as provided in their rental contract, but that appellee Myers refused to pay the debt or any part of same, and prayed for judgment for the debt, and for a foreclosure of the contract and statutory liens on the property described by appellee in his petition, and for relief general and special.

Appellee replied to said cross-action by supplemental petition, and, among other matters, alleged: (a) That the court did not have jurisdiction of the cross-action of lessor for rents past due, because cross-plaintiffs had elected to assert their cause of action in the manner and form of distress proceedings which were still pending, though no petition or any pleadings had, under such distress proceedings, been filed in the district court of Harris county, the district court could not acquire jurisdiction through a cross-action of their suit for rent and foreclosure of their asserted liens in the absence of compliance with article 5239, R.S.1925, wherefore the cross-action should be dismissed; and (b) that the property upon which the foreclosure was sought was exempt from execution and so the landlord's statutory lien did not apply, and there was no contract lien to be enforced.

The court sustained appellees' pleas to the jurisdiction of the court to hear and determine appellants' cross-action for rents and foreclosure of the liens asserted, and dismissed the cross-action. Appellee's suit for conversion was then tried to a jury upon special issues in answer to which they found: (a) That the value of the property alleged to have been converted was $5,328.70; (b) that appellant Fred Dittman was not actuated by malice in having the distress warrant issued; (c) that appellant Carl Dittman was not actuated by malice in having the distress warrant issued; (d) that appellee Myers was entitled to recover $1,500 as exemplary damages caused him by Fred Dittman and Carl Dittman causing the distress warrant to be issued; (e) that the Tri-City Publishing Company gave to appellee Myers the right of possession of the personal property described in his petition; (f) that said company gave Myers such right of possession on December 14, 1932; (g) that all of the property mentioned in appellee Myers' petition situated in the Dittman building belonged to appellee Myers; (h) that Myers gave a consideration to the corporation, Tri-City Publishing Company, for the right of possession of said property; (i) that appellee Myers did request appellants not to proceed further with the distress proceedings; and that appellants', the Dittmans', failure to proceed further with the distress proceedings was not caused by Myers' request not to so proceed.

On the answers of the jury, judgment was rendered in favor of appellee Myers against appellants Fred Dittman, Carl Dittman, and A. E. Drew for $5,328.70, and costs of suit. It appearing that Myers had conveyed to his attorneys a one-half interest in said judgment, the judgment accordingly decreed one-half of the sum of said judgment to Myers and one-half to his attorneys. We have the case on appeal.

We sustain the assignment against the jury's finding that the value of the property alleged to have been converted was $5,328.70, as without support in the evidence, in that: (a) Appellee alleged that the property was of the reasonable market value of $5,643 in Goose Creek at the time of its conversion. The issue did not inquire as to its reasonable market value, but merely what was the value of the property on May 14, 1934, the day the property was taken into custody by virtue of the distress warrant. There was no alternative allegation that if there was no market value for the property in its then con-

dition in Goose Creek, then said property was of the intrinsic value of such sum or of any sum. Wilson v. Modica (Tex.Civ.App.) 80 S.W.(2d) 411. Appellee attempted to make proof that there was no market in Goose Creek for the sale of such property as he had alleged by proving that there was no secondhand dealer for such property in Goose Creek, and then offered evidence of what some of the articles cost, and what others would probably sell for, or was probably worth. This proof fell short of meeting the requirements of the law under such conditions. (b) It was undisputed that debts were owing and past due on several parts or portions of the printing equipment, and that enforceable preference liens were in existence on same to secure the payment of the debts. For instance, the "Press (Babcock Optimus) Motor" which appellee valued at $2,500, and the jury found to be $2,300; and the "Linotype and Magazines" which appellee valued at $1,200, and which the jury found to be $1,200. These liens were foreclosed and the property was sold to the lienholders under foreclosure before this suit went to judgment. This being true, appellee did not own that property, and the finding of the jury that same belonged to Myers was not only not supported by the evidence, but squarely against the undisputed evidence. But appellee says that after the foreclosure sales of this property he had an agreement with the purchasers that the machinery would remain in the building and in his possession, and he would pay off the judgments. He admits, however, that he did not do so. The mere fact that the owner of the property agreed for it to remain in his possession under his promise to discharge the judgments, and which he failed to do, did not vest in him title to the property. Besides, the linotype and magazines had been removed from the building by the owner of same prior to the filing of this suit and judgment herein. (c) The undisputed evidence, in fact the testimony of appellee Myers himself, shows the property, the printing outfit, belonged to the "Tri-City Publishing Company," a corporation of which he was a stockholder and officer. This corporation failed to pay its franchise tax and thus lost its right and ceased to do business, but it had not been legally dissolved or its affairs wound up. Myers and one C. M. Cox decided to take over the properties of the corporation and operate same as a partnership to be known as Myers & Cox, and, without any act on the part of the officials or stockholders of the corporation, they took charge of the property, or rather continued themselves in charge, as Myers had been for the corporation before it lost its franchise, and they, Myers & Cox, as such partnership operated the plant. This did not invest ownership of the property in Myers, such as that he could assert the property to be his in his own right in which capacity he sued. Appellee, over the objections of appellants, was permitted to testify that none of the officers or stockholders of the Tri-City Publishing Company, corporation, questioned his ownership of or his title to the property; that none of the creditors of the corporation, nor either of the appellants, questioned his title to same, and that he openly and notoriously held himself out as the full owner of said property. We think the testimony was not admissible, but, if so, it did not prove title to the property in appellee. The law prescribes the manner in which the property of a corporation may be sold, transferred, or acquired, and no compliance therewith was shown by this testimony, nor by any other evidence. It still remained the property of the corporation, and not that of appellee. The mere fact that he was a stockholder and in possession of the property did not warrant him in laying claim to and asserting exclusive ownership of the corporate property.

The jury found that the Tri-City Publishing Company, on December 14, 1932, gave appellee Myers the right to the possession of the property involved. There is no competent evidence in the record supporting this finding. It is undisputed that the corporation did not by any act give such right. True, Myers testified that he had possession and was operating the printing plant for the corporation at the time the corporation lost its franchise and right to do business, and that none of the officers or stockholders objected to his holding possession and operating the business afterwards. He admitted that no action was taken by the board of directors of the corporation relative to the matter. According to his own testimony, he simply remained in possession of the property when the corporation ceased to do business, and finally formed a partnership with C. M. Cox, and they took the property and used it as part of the partnership equipment. The fact that he, on his own motion, continued to hold possession of the

corporate property when the corporation ceased to do business, and then in partnership with Cox operated same, and that he claimed the property as his own, and no one questioned his title thereto, did not vest in him the legal title to same, nor did the silence of the officers and stockholders of the corporation as to his claim vest same in him, nor prove that the corporation had given him, the right of possession. The assignment against this finding is sustained.

■ The findings of the jury that neither Fred Dittman, the lessor, nor his agent, Carl Dittman, in suing out the distress warrant, acted with malice, is abundantly supported by the evidence. This finding disproved appellee's allegations for exemplary damages. Furthermore, the written rental contract of Myers and Cox with Fred Dittman specifically provided that in the event any creditor of the Tri-City Publishing Company (which had then ceased to do business) should in any manner interfere with or stop the publishing of their said newspaper with the machinery or equipment situated in the rented building (here involved), the rental contract should become null and void, and the lessor should have the right to demand the keys of the building and lock up same. That the creditors foreclosed their liens and sold the "Press (Babcock Optimus) Motor" and "Linotype and Magazines" prior to the suing out of the distress warrant and closing the building is without dispute. It also provided that if lessee (Myers) failed to pay the monthly rental for the building in advance each month, lessor, at his option, had the right to cancel the rental contract upon 10 days' written notice. It was admitted by appellee that he did not pay the rent, and that he was given the 10 days' notice in writing to vacate the building. So, under the contract, appellee had no cause of action against Fred Dittman for the canceling of the rent contract and the closing up of the rented premises. He did only what his contract gave him the right to do.

■ Error is assigned against the court's sustaining appellee's exception and plea to the jurisdiction of the court to hear and determine appellant Fred Dittman's cross-action for his past-due rents and foreclosure of his asserted contractual and landlord's lien on the property in the rented building at the time of the execution of the distress warrant and the closing of the building. Dittman admitted that no citation, as required by article 5234, R. S.1925, was issued to appellee, and that the distress warrant, upon execution, was not filed in the district court of Harris county, as commanded by the writ; in other words, he admitted that he had not had any of the distress proceedings filed in the district court, but he testified that he did not do so because appellee Myers requested him not to do so. Appellee admitted that he did request Dittman not to file the process in the district court. It was upon the contention of appellee that appellant, having elected to begin his proceedings against appellee merely as distress proceedings which had not been filed in the district court as required by the statutes, could not, in this suit for damages alleged to have grown out of the execution of the distress warrant, maintain a cross-action for rents and foreclosure of asserted liens, that the court sustained the plea to the jurisdiction of the court, and dismissed appellants' cross-action. This was error. The court had jurisdiction to hear and determine the matter. Article 2017, R.S. 1925, provides that: "The defendant may plead in set off any counter claim founded on a cause of action arising out of or incident to, or connected with, the plaintiff's cause of action." We think it obvious that the cause of action asserted by appellant in his cross-action against appellee was "incident to, or connected with" appellee's alleged cause of action.

From what we have said, it follows that the judgment must be reversed and the cause remanded, and it is so ordered.

Reversed and remanded.