Edgar Mercer Burleson v. Commissioner. Estate of Elizabeth Burleson, Deceased, Edgar Mercer Burleson, Independent Executor v. Commissioner.
Burleson v. Commissioner
Docket Nos. 38087, 38088.
United States Tax Court
1953 Tax Ct. Memo LEXIS 146; 12 T.C.M. (CCH) 932; T.C.M. (RIA) 53279; August 17, 1953
W. M. Aikman, Esq., and Ben F. Foster, Esq., 506 South Texas Building, San Antonio, Tex., for the petitioners. John P. Higgins, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined deficiencies in income tax and penalties as follows: Docket No.
Petitioner
Year
Deficiency
Penalty
38087
Edgar Mercer Burleson
1943
$1,551.59
$ 775.80
1944
7,873.31
3,936.65
1945
3,058.45
1,529.22
38088
Elizabeth Burleson
1943
1,557.29
778.65
1944
8,053.31
4,026.65
1945
3,163.46
1,581.73
*147 The following issues are presented: (1) Did the unidentified bank deposits and cash expenditures of the petitioners in 1943, 1944 and 1945 constitute income to them? (2) Was the Post Laundry and Dry Cleaners, Inc., a separate taxable entity after revocation of its corporate charter without notice to the directors of the corporation? (3) Was the Post Laundry and Dry Cleaners, Inc., a bona fide partnership after the directors of the preceding corporation received notice of the revocation of the charter? (4) Were the petitioners entitled to a net operating loss carry-back from the operations of the Post Laundry and Dry Cleaners, Inc., in 1945, 1946 and 1947? (5) Were the deficiencies in income and victory tax for the years 1943, 1944 and 1945 due to fraud with intent to evade tax? (6) Has the period of limitations upon the assessment and collection of the petitioners' tax liability for 1943, 1944 and 1945 expired? Findings of Fact The stipulation of facts is incorporated herein by reference. Edgar M. Burleson and Elizabeth Burleson (now deceased), husband and wife, were residents of Texas. They filed separate income tax returns for the years 1943, 1944 and 1945 on *148 a community property basis, and joint returns for 1946 and 1947, with the collector of internal revenue for the first district of Texas. Edgar M. Burleson will hereinafter be referred to as the petitioner. Petitioner kept books for seven or eight different individuals or small companies. As compensation for this work he received a monthly fee or an annual salary. In addition to this income he also received a small income from interest and dividends. Petitioner kept no books for himself. When the Court asked him why he did not keep books, he replied that he did not have to bother because his clients paid him monthly or a flat fee for the year. On their 1943 returns petitioner and his wife reported community net income in the amount of $4,590. Respondent determined their gross community income as $16,161.30. From this, respondent determined that $11,571.30 was unreported income. Petitioner accounted for $11,000 of this unreported income as advances from A. B. Phelps, an old friend, money from the sale of a piano, and the repayment of loans. Petitioner did not account for $571.30 which was part of respondent's determination of unreported income. In 1944 their gross community income *149 was reported as $6,731. This was derived from a business interest of petitioner, his profession, and unearned income. Respondent determined that the gross income was $45,414.39, and that $38,683.39 was unreported income. Petitioner accounted for $33,820.77 of the amount included in respondent's determination. Thus, the sum of respondent's adjustment unaccounted for was $4,862.62. The gross community income reported in 1945 was $10,315. Respondent determined that their gross community income was $28,472.82. According to respondent's determination this left $18,157.82 as unreported income. Of this sum petitioner accounted for $14,800, and he accounted for it as money from Phelps, gifts from his mother-in-law, insurance, and repayment of loans. There remained unexplained the sum of $3,357.82 which was part of the unreported income as determined by respondent. The Post Laundry and Dry Cleaners, Inc. (hereinafter referred to as the Post Laundry), was organized underthe laws of Texas on April 9, 1943. It operated as a corporation and filed corporate income tax returns for 1944 and 1945. In August 1944 petitioner purchased 50 per cent of the stock of the Post Laundry with money advanced *150 by Phelps. Petitioner and L. L. Stuckey, who also owned 50 per cent of the stock of the corporation, operated the Post Laundry. The business was originally located on the Hondo Army Airfield, Hondo, Texas, and did nothing but Government work. In 1945 the commanding officer of the airfield ordered that the plant be removed from the field. Petitioner and Stuckey then moved the plant and equipment to San Antonio where they continued to operate the business. On March 4, 1947, the Secretary of State of Texas notified petitioner that the corporate charter of the Post Laundry had been forfeited on June 5, 1945, for the corporation's failure to file proof of payment of the capital stock. This was petitioner's first notice of the cancellation of the corporate charter. Corporate tax returns for the Post Laundry had been filed for 1944 and 1945. After petitioner and Stuckey were notified of the forfeiture of the charter, they filed an amended corporate return for 1945 (for that part of the year beginning January 1, 1945, to May 31, 1945), a partnership return for the business for 1945 (June 1, 1945, to December 31, 1945), and amended individual returns for 1945. On June 5, 1947, petitioner *151 and Stuckey filed a certificate of incorporation under the Assumed Name Law of Texas whereby the name of the business formerly known as the Post Laundry and Dry Cleaners, Inc., was to be known as the Quality Laundry and Cleaners (hereinafter referred to as the Quality Laundry). The Quality Laundry operated as a partnership from June 5, 1947, to December 31, 1947, with a net loss of $15,065.92. Petitioner and Stuckey were equal partners during this time, but on December 29, 1947, petitioner's interest in the business was sold. Petitioner attached a statement, dated June 2, 1947, to his 1945 amended individual return, to the 1945 partnership return, and to the amended corporation return for 1945. The statement in part is as follows: "This partnership grew out of a Corporation organized and operated under the same name. "The Corporation was organized in April 1943, with an Authorized Capital Stock of $40,950.00, of which $34,557.00 was paid in. The unpaid subscription of $6,393.00 was never paid, and the Stockholder owing for same had transferred his paid up stock to the other two stockholders, leaving all the stock held by two stockholders. "Unknown to the present stockholders *152 the Secy. of State forfeited the Charter June 5th, 1945, for non-payment of unpaid Capital Stock, therefore, we have operated as a partnership from and after the time of forefeiting the Charter. Each of the two partners were and are equally active in all the affairs of the business. "It was not discovered that the Charter had been forfeited until 1946, and in the meantime a return was made for the year 1945 as a Corporation, therefore, the amended return of the Corporation, and a return for the Partnership, together with amended returns of the individuals for the year 1945, are attached hereto." Respondent concedes that the Post Laundry operated as a partnership from June 5, 1947, until December 31, 1947, and that the petitioner's distributable share of the net operating loss may be carried back. Respondent also concedes that no part of the deficiencies in income and victory tax of Elizabeth Burleson is due to fraud, and that the period of limitations upon the assessment of her 1943 tax has expired. Petitioner's 1943 income tax return was received by the collector in February 1944. The deficiency notice for the years before us is dated September 24, 1951. On December 16, 1949, petitioner *153 executed a consent agreement for the year 1944 extending the period of limitations upon assessment of income to June 30, 1951. A like agreement was executed on May 9, 1951, which extended the period to June 30, 1952. For the year 1945 petitioner, on March 10, 1949, executed an agreement which extended the period to June 30, 1950. On December 16, 1949, the period was extended to June 30, 1951. On May 9, 1951, this period was extended to June 30, 1952. The same agreements were executed for petitioner's wife. Opinion Issue 1 Did the unidentified bank deposits and cash expenditures of the petitioner in 1943, 1944 and 1945 constitute income to him? Respondent has determined that petitioner had unreported income in 1943, 1944 and 1945 and has accordingly adjusted petitioner's net income for those years. Petitioner does not deny that he had or held certain sums in excess of his reported income, but he contends that these sums were gifts, repayment of prior loans, and money given to him by Phelps to hold for future investment purposes. He maintains that these gifts, repayments, and money held for investment purpose were not income. In 1943 petitioner and his wife reported a gross *154 income of $4,590. From bank deposits, the purchase of Government bonds, and an accrued fee, the respondent determined that their gross income was $16,161.30. The difference between the respondent's determination and the reported income ($16,161.30 less $4,590) is $11,571.30. Petitioner has explained the receipt of $11,000 of this "unreported income". Part of it was money advanced by Phelps and was held for investment purposes; part resulted from a sale of personal property and the repayment of loans. Petitioner has not accounted for $571.30, and the burden is upon him to account for it. The respondent would be sustained as to this amount if it were not for the period of limitations which the petitioner has pleaded. The waivers which petitioner executed did not apply to the year 1943; therefore, petitioner is sustained as to this year. [1]
In 1944 petitioner and his wife reported a gross income of $6,731. From bank deposits, the purchase of Government bonds, the purchase of the Post Laundry stock, and unpaid salary, respondent determined their gross income to be $45,414.39. The difference between respondent's *155 determination and the reported income ($45,414.39 less $6,731) is $38,683.39. Petitioner has explained the receipt of $33,820.77 of this "unreported income". Phelps gave petitioner some $22,000; his mother-in-law gave him $7,500; the balance was from repayment of loans. However, the remainder of $4,862.62, which is not accounted for, is unreported income under respondent's determination. As to this amount respondent is sustained. We have examined the year 1945 in the same manner as 1943 and 1944, and we find that petitioner received the sum of $3,357.82 which was not explained. Again, as to this amount respondent must be sustained in that this is unreported income. Issue 2 Was the Post Laundry a separate taxable entity after revocation of its corporate charter without notice to the directors of the corporation? It is the contention of petitioner that from June 5, 1945 (the date the charter was forfeited), until the laundry business was sold at the close of 1947, the business was not conducted as a corporation, and further, it did not have the characteristics of an "association", as that term is used in the regulations. Petitioner then concludes that the business was a partnership. *156 As opposed to this, respondent maintains that the business was either a de facto corporation, or an association taxable as a corporation until such time as the notice of forfeiture was received (March 4, 1947), and the stockholders actually changed the business form to that of a partnership. The respondent concedes that the business was a partnership from June 5, 1947, until December 31, 1947; therefore, we must determine the form of the business from June 5, 1945, to June 5, 1947. Without a corporate charter the business could not be a de jure corporation. See 13 Am. Jur. 192, and 8 Fletcher Cyc. Corp. 63. It could be a de facto corporation or an association taxable as a corporation. Section 3797 (a) (3), I.R.C.; Regulations 111, section 29.3797-2. Or, as an alternative, it could be a partnership provided petitioner and Stuckey formed a partnership. However, a partnership will not automatically arise out of the mere cessation of the corporate form of doing business; that is, a partnership does not arise by operation of law. The formation of a partnership requires that the partners have a definite intention to form a partnership, and that acting together in *157 good faith with a business purpose they actually carried out their intention. We do not find from the record that this was done prior to June 5, 1947. The first evidence and the only evidence of a partnership, except petitioner's testimony, was a statement attached to his amended 1945 return, to the amended 1945 corporation return, and to the 1945 partnership return. All of these returns were prepared on or about June 3, 1947. It is also important to note that this statement was dated June 2, 1947, two years after the alleged formation of the partnership. In this statement petitioner claimed that he and Stuckey operated the "business as a partnership from and after the time of forfeiting the charter." The existence of a partnership from the time of forfeiting the charter is not sustained by petitioner's acts during the time the partnership was alleged to be in esse. A 1945 corporate return was filed for the business. Petitioner himself executed the return as the "person preparing the return." Now, why would an experienced bookkeeper or an accountant prepare a corporate return for a business if the business were in fact a partnership? The record does not answer this query. The only *158 reasonable conclusion is that petitioner himself, at the time he made out the 1945 corporate return, on or about February 22, 1946, did not think of the business as a partnership. Our conclusion that the business was not a partnership is not based on the tax returns alone. There are numerous other corroborating facts. There was no evidence of a partnership agreement; even for the period after June 5, 1947, we do not find such an agreement. There was no evidence that the business was held out to the public to be a partnership. There was no evidence of partnership books or records. The first partnership return was one filed for 1945 on or after June 3, 1947. There was no transfer of property from the corporation to the alleged partners. In the aggregate these facts do not sustain the existence of a partnership, but, on the contrary, sustain respondent's determination that there was no partnership between June 5, 1945, and June 5, 1947. See Dittman v. Myers, 95 S.W. (2d) 1332. Since the business was not a partnership prior to June 5, 1947, it was either a de facto corporation or an association. Because the definition of a corporation in section 3797 (a) (3) includes association, *159 there is no need for us to determine whether the Post Laundry was a de facto corporation or an association. Both are taxable as a corporation. The respondent must be sustained on this issue. Coast Carton Co. v. Commissioner, 149 Fed. (2d) 739; affirming 3 T.C. 676. Issue 3 Was the Post Laundry a bona fide partnership after the directors of the preceding corporation received, on March 4, 1947, notice of the revocation of its charter? Respondent concedes that the business was operated as a partnership from June 5, 1947, to December 31, 1947. Since we have already determined in Issue 2 above, that the business prior to June 5, 1947, was either a de facto corporation or an association, there is no need for us to specially consider the form of the business from March 4, 1947, to June 5, 1947. The mere notice of a forfeiture of the corporate charter did not create a partnership. Issue 4 Was petitioner entitled to a net operating loss carry-back from the operation of the Post Laundry in 1945, 1946 and 1947? In petitioner's "Motion to Amend Petition", filed November 5, 1952, he stated the following: "e. The business conducted as a partnership under *160 the name of Post Laundry & Dry Cleaners, Inc. and Quality Laundry & Cleaners sustained a loss of $115.92 during the period June 6, 1945 to December 31, 1946, and a loss of $14,220.14 during the calendar year 1946, and a loss of $25,632.67 during the calendar year 1947, $10,148.30 of which latter loss occurred in the first five months of the year and $15,483.84 occurred in the last seven months." Respondent concedes that the business had a net operating loss of $15,065.92 for the period June 5, 1947, to December 31, 1947, and that $7,532.96 represents the petitioner's distributable share of the loss for that time which may be carried back. The only evidence of the alleged losses for 1945, 1946, and for part of 1947 is the report of the losses on the income tax returns of the business. Income tax returns are not proof of the statements on the returns. Pennant Cafeteria Co., 5 B.T.A. 293; Louis Halle, 7 T.C. 245; affd., 175 Fed. (2d) 500. On the record before us, the losses, excepting those conceded by respondent, have not been proved. Therefore they can not be allowed and respondent must be sustained. Issue 5 Were parts of the deficiencies *161 in income and victory tax of the petitioner for the years 1943, 1944 and 1945 due to fraud with intent to evade tax? The respondent has the burden of proving fraud. In this case respondent has attempted to meet this burden by showing that large sums of money passed through petitioner's hands, and further that petitioner did not properly account for or did not report any of these sums as income. Petitioner has explained the source of the greatest part of this "unreported income." And while we have sustained the respondent's determination as to part of this "unreported income", we can not find that the petitioner's failure to report those sums which we found against him was due to fraud. Respondent having failed to sustain his burden of proof on the issue of fraud, we find for the petitioner. Issue 6 Has the period of limitations upon the assessment and collection of petitioner's taxable liability for 1943, 1944 and 1945 expired? Since petitioner has executed waivers which extend the period for assessment for 1944 and 1945 income, we shall only concern ourselves in this discussion with the assessment for the year 1943. Respondent contends that section 275 (a), I.R.C. *162 , [2] is not a bar to its determination because (1) petitioner was fraudulent in reporting his income, section 276 (a), [3] and (2) petitioner omitted in excess of 25 per cent of his income from his return, section 275 (c). [2]
*163 Our determination of the fraud question prevents respondent's assessment under section 276 (a). Since $571.30 [4] is not in excess of 25 per cent of $4,590, [5]section 275 (a) is not applicable; therefore, petitioner must be sustained as to the year 1943. Because petitioner executed waivers for the years 1944 and 1945, which extended the period of limitations to June 30, 1952, respondent is sustained as to these two latter years, 1944 and 1945. Decisions will be entered under Rule 50. Footnotes
1. See Issue 6 for a discussion pertaining to the period of limitations.↩
2. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. (a) General Rule. - The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed. ↩
3. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.↩
4. Amount of unreported gross income for 1943 (see Issue 1). ↩
5. Amount of reported gross income for 1943.↩