BENNETT E. MEYERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 19856, 20352.    Promulgated November 30, 1953.

*Murray M. Weinstein, Esq.*, for the petitioner.
*Conway Kitchen, Esq.*, for the respondent.

332

334

338

OPINION.

### Individual Liability.

JOHNSON, *Judge:* The hearings herein extended over a period of 6½ days, at which petitioner submitted no testimony or documentary evidence, other than through Lamarre, one of the principal witnesses of respondent, who was called for the limited purpose of identifying the books of account of the Corporation. After the submission of such records and two other documents, petitioner rested his individual case with the announcement that he had overcome the presumption in favor of the correctness of the respondent's determination.

On brief petitioner concedes that he "defaulted" on all of the issues raised by his petition except the matter of dividends from the Corporation. The basis for the dividends charged to petitioner was the payment in the name of Lamarre and Readnower each year, and Curnutt in 1945, as salaries of amounts in excess of their actual compensation; the charges on the corporate books for the decorating work, radio, air-conditioning equipment, blue Cadillac, and funds for investment in The Aid Company. The substance of petitioner's contention on brief is that the books of the Corporation show that Lamarre and Readnower were the recipients of the income attributed to him. The source of the other income included in petitioner's taxable income as

dividends is not discussed. No contention is made that the Corporation did not have earnings out of which to pay the dividends.

The payments made as salary were entered in the books of the Corporation as such. But the decision must be made from all of the facts, the book entries being no more than evidence on the point. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179.

The core of the plan initiated and made effective by petitioner was to conceal his identity as the sole stockholder and directing head of the Corporation, an objective he regarded as necessary because of the commission he held as an officer of the United States Army. Not being a stockholder of record, dividends paid directly to him as such would have disclosed his hand. To obtain earnings of the Corporation by other means, he devised and carried out the several schemes which are set forth in detail in our findings and need not be repeated.

The payments to or for the account of petitioner were testified to by Lamarre and Readnower and their testimony is in most respects corroborated by checks, invoices, book entries, and other documentary evidence.

Statements appearing in the brief of petitioner indicate that he is of the belief that the dividends charged to him as income include the $59,836.05. The amount represents repayment of loans of petitioner, a return of capital, and no part of it was included in gross income of petitioner by the respondent.

The evidence supports in every respect the determinations made by the respondent on the dividends received by the petitioner each year from the Corporation. Accordingly, his determinations as to the receipt of the income will not be disturbed.

### Transferee Liability.

Substantially all of the deficiencies determined against the Corporation resulted from disallowance of all of the fictitious salaries claimed for Lamarre and Readnower, and salary of Curnutt to the extent respondent found it to be unreasonable as compensation for services actually rendered. The remaining items disallowed, all of which were small in comparison with the salary adjustments, consist of expenses of the blue Cadillac, the air-conditioning equipment, excessive depreciation, and loss in equipment scrapped.

The evidence substantiates the disallowance of the fictitious salaries, automobile expense, and air-conditioning equipment. No evidence was offered by the petitioner in an effort to establish error on the part of the respondent with respect to the remaining items. Accordingly, the deficiencies determined against the Corporation will not be disturbed.

The respondent established that the petitioner received amounts each year, without consideration, as a stockholder of the Corporation.

A further burden of the respondent was to prove that the distributions rendered the Corporation insolvent or that it was insolvent at the times they were made. *Ruth Halle Rowen*, 18 T. C. 874.

As part of his proof of insolvency, respondent submitted a statement, prepared by a qualified accountant, showing the extent to which the Corporation was insolvent. The accuracy of the figures in the statement is not being questioned. The statement starts with an operating deficit of $30,354.82 on January 1, 1941, which was claimed by the Corporation and allowed by the respondent in computing the deficiency for 1941 on the basis of net taxable income of $65,027.51. From the net taxable income he deducted income tax liability, without penalties, of $36,132.58 on the income to arrive at the earnings of $28,894.93, a figure of $3,598.31 less than the total distributions made to petitioner at various times throughout the year.

A similar computation was made for each taxable year, starting with a deficit, which reflected adjustments properly made for erroneous deductions, and in which deductions were made for accumulated tax liability, including fraud penalty. The result each year was a deficit before making any allowance for the distributions made throughout the year for the account of petitioner.

The adjustments made for income tax liability in determining the question of insolvency were proper even though the amounts were unknown at the time of the transfers. *Scott* v. *Commissioner*, 117 F. 2d 36; *Vestal* v. *Commissioner*, 152 F. 2d 132; *Samuel Keller*, 21 B. T. A. 84; *J. P. Quirk*, 15 T. C. 709.

Where, as here, the taxpayer was insolvent at the beginning of the taxable period, the condition is presumed to continue to exist until shown to be otherwise. *Terrace Corporation*, 37 B. T. A. 263. Instead of the contrary being shown, proof of the respondent is that the Corporation continued to be insolvent at the close of each taxable year and was liquidated in 1946, leaving no assets for the respondent to proceed against for collection of the taxes.

Finally, the proof made by respondent clearly shows that throughout the taxable years petitioner's purpose was to withdraw assets of the Corporation without regard to its tax liability or the effect it would have on its solvency. The scheme continued into 1946 and was availed of in that year in anticipation of the dissolution of the Corporation. Nothing in the record suggests that petitioner, as sole stockholder, ever intended to continue the life of the Corporation after it had played its part in the war. A reasonable inference from the facts is that the distributions were each part of a series of payments in connection with liquidation shortly after the termination of the war. A series of distributions in liquidation is treated as a whole in determining whether they created insolvency of the transferor. *Botz* v. *Helvering*, 134 F. 2d 538; *Borall Corporation* v. *Commissioner*,

167 F. 2d 865. The respondent has made sufficient proof of the liability of petitioner as a transferee of the Corporation.

But petitioner insists that respondent is estopped from asserting that the same money was received by him as income and as a transferee. He relied on the case of *Hall C. Smith*, 11 T. C. 174, affd. 194 F. 2d 536, at the hearing. Thereafter, on April 6, 1953, the ruling of the Circuit Court was reversed by the Supreme Court, 345 U. S. 278, in a proceeding consolidated with *Commissioner* v. *Hartfield*, 194 F. 2d 662, reversing 16 T. C. 200. The cases contained similar controlling facts. Petitioner seeks to avoid the force of the decision of the Supreme Court on the theory that the case was decided on a ground having no bearing on the issue here.

The taxpayers in the *Smith* and *Hartfield* cases, *supra*, who, as here, reported their income on the cash basis, received salary from closely held corporations of which they were officers and stockholders, all of which they reported as taxable income. Thereafter, the Commissioner determined deficiencies against the corporations as the result of disallowances of portions of the salaries as excessive compensation, and held that the taxpayers were liable as transferees for the corporate deficiencies. The transferee liability was based upon the receipt of the excessive salaries.

The question before the Supreme Court was whether the salary should be excluded from income in the year of receipt in view of the fact that the portion disallowed as a deduction to the corporation resulted in transferee liability. The position of the taxpayers was that the adjustment should occur in the year of receipt, whereas the Commissioner contended that it should be deferred until the year of payment of the transferee liability.

The Court held that the salaries were taxable to the taxpayers in the year of receipt of the income. In doing so it pointed out that there must be an annual accounting of income for tax purposes; that "the salaries were received under a claim of individual right—not under a claim of right as a trustee"; that "Actually it could not have been said at the end of each of the years involved that the transferee liability would materialize"; and that "a potential or dormant restriction, such as here involved, which depends upon the future application of rules of law to present facts, is not a 'restriction on use' within the meaning of *North American Oil* v. *Burnet*, supra [286 U. S. 417]." Concerning the argument made that it would be inequitable to treat as income an amount thereafter found not to be income, the Court said:

It would be disruptive of an orderly collection of the revenue to rule that the counting must be done over again to reflect events occurring after the year for which the count is made, and would violate the spirit of the annual accounting system. * * *

It is apparent that the distributions made here were received by petitioner under a claim of right and without any restrictions on the use of the money, and no contention is specifically made to the contrary. The decision of the Supreme Court, just discussed, fully supports the action of the respondent in including the amounts in taxable income of petitioner in the year of receipt and asserting transferee liability against him for additional taxes of the Corporation resulting from the disallowance of the amounts as deductions.

The petitioner received the total amount of $191,760.55 as a transferee. That amount, as respondent concedes on brief, limits the transferee liability of petitioner for the deficiencies and penalties determined against the Corporation.

*Credits.*

Petitioner asserts that under the doctrine of equitable recoupment he is entitled to a credit against the deficiencies for the taxes paid by Lamarre and Readnower upon the income taxed to him here; and the agreed liability of his wife in the amount of $28,666.67, as a transferee of his assets. This Court lacks power to require the Commissioner to credit an overpayment of a taxpayer to the account of another taxpayer. *Anna Eliza Masterson*, 1 T. C. 315, and cases cited therein. Concerning the credit for transferee liability, which is less than the stipulated overpayments, less liability for deficiencies and penalties, respondent has suggested on brief that petitioner make application to the appropriate Director of Internal Revenue for relief.

Another contention of petitioner is that his liability as a transferee should be reduced by $16,200 on account of the payment he made to Lamarre in July 1947 to pay an additional assessment made against the Corporation for income taxes. The payment was made before the deficiencies involved herein were determined, and, therefore, did not serve to reduce any of the transferee liability involved herein. Under the circumstances, there is no ground for allowing the reduction.

Petitioner also contends that the dividends charged to him should in any event be reduced by $15,000 for the check he gave Lamarre on December 29, 1941, for that amount. All the record discloses respecting the transaction is that the check was endorsed by Lamarre and its amount was credited to a notes receivable account on the books of the Corporation, which contained a charge on October 31, 1941, for a like amount. Lamarre, the only witness who testified concerning the transaction, could not recall the circumstances giving rise to the payment. The proof made by petitioner does not establish a repayment of dividends previously received or other facts warranting us in allowing the amount as a credit against earnings received in 1941 or any other taxable year.

*Fraud.*

Respondent's claim of fraud against petitioner is based upon petitioner's failure to include in his returns the income derived from fictitious salaries paid in the names of Lamarre, Readnower, and Curnutt, and the distributions made to him as the result of using earnings of the Corporation to pay for decorating his apartments, the blue Cadillac, air-conditioning equipment, and expenses of operating the blue Cadillac. His charge of fraud against the Corporation is confined, on brief, to the deductions taken for the fictitious salaries paid in the names of the individuals. The penalties are opposed by the petitioner upon the general ground that respondent has not sustained his burden of proof by clear and convincing evidence, in connection with which he argues that the testimony of Lamarre and Readnower should not be followed.

The fraud penalties apply to the entire deficiency if any part thereof was due to fraud with intent to evade tax. *Mauch* v. *Commissioner*, 113 F. 2d 555; *Arlette Coat Co.*, 14 T. C. 751.

The pleas of guilty made by the petitioner in criminal proceedings involving the same matter constitute admissions against interest, and without any explanation of the circumstances surrounding the pleas, they are sufficient to establish fraud with intent to evade tax as to him. *Thomas J. McLaughlin*, 29 B. T. A. 247; *Manasse Karger*, 38 B. T. A. 209; *George Caldwell*, 47 B. T. A. 168, affd. 135 F. 2d 488.

There is not only no explanation before us to offset the admission of fact resulting from the pleas of guilt in the criminal proceedings but the proof otherwise made by the respondent was ample to sustain his burden of proof. Detailed discussion of the facts would serve no useful purpose. It is sufficient to point out that the evidence discloses a plan of petitioner, put into effect in 1941 and continued for the remainder of the taxable years with the active cooperation of Lamarre from the beginning, and of Readnower commencing in 1942, and of Curnutt in 1945 as to the fictitious salaries, to obtain earnings of the Corporation under the guise of corporate expenses and capital outlays, and not include the distributions in returns for tax purposes. The scheme and the effort made to conceal the actualities contain all of the essential earmarks of a determination to evade income taxes by false and fraudulent means.

The plan, as conceived by petitioner, required participation by the Corporation, which was no obstacle in view of his complete ownership of its stock, and the obvious willingness of Lamarre, Readnower, and Curnutt, particularly the former, at all times important, to actively participate in the fraudulent scheme. The intent of the individuals under the circumstances is to be imputed to the Corporation. *Auerbach Shoe Co.*, 21 T. C. 191. The amounts were deducted in the returns of the Corporation as salary, with knowledge that no

services had been performed for the payments and that the deductions were nothing more than a detail in a general scheme to withdraw profits of the enterprise for the account of petitioner under the guise of legitimate operating expenses. Such action discloses fraudulent returns with intent to evade tax. *Coast Carton Co.*, 3 T. C. 676, affd. 149 F. 2d 739.

It follows that no error was committed by the respondent in imposing the fraud penalties against petitioner and the Corporation.

> *Decision will be entered for the respondent in Docket No. 19856. Decision will be entered in Docket No. 20352 that petitioner is liable as a transferee in the amount of $191,760.55 for unpaid income, declared value excess-profits, and excess profits tax, and penalties of the Aviation Electric Corporation, together with interest as provided by law.*