ROBERT CAPPETTA AND SEENA CAPPETTA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cappetta v. Commissioner
Docket No. 10534-82.
United States Tax Court
T.C. Memo 1985-76; 1985 Tax Ct. Memo LEXIS 554; 49 T.C.M. (CCH) 785; T.C.M. (RIA) 85076; February 21, 1985. Leonard M. Simon, for the petitioners. Laurence D. Ziegler and Thaddeus G. Wozny, for the respondent. GERBER
MEMORANDUM OPINION Gerber, Judge:* Respondent determined deficiencies in Federal income tax against petitioners Robert Cappetta and Seena Cappetta for the years 1974, 1975, and 1976. Petitioners filed joint returns for those years. Respondent, for the same taxable years, also determined additions to tax under section 6653(b) [1] against petitioner [2] Robert Cappetta only. The deficiencies and additions to tax are in the following amounts: Taxable Year
Addition Under
Ended
Deficiency
Sec. 6653(b)
Dec. 31, 1974
$5,763
$2,881
Dec. 31, 1975
9,829
4,914
Dec. 31, 1976
5,192
2,596
Total
$20,784
?10,391
*556 Petitioners have stipulated that they underreported their taxable income for the years and in the amounts determined by respondent. The issues to be decided are as follows: (1) Whether petitioners are entitled to any credits for amounts withheld from the wages of others under petitioner's employ, or for the employer's portion of FICA tax; and (2) whether petitioner, in the circumstances of this case, is liable for the addition to tax for fraud under section 6653(b). Petitioners and respondent have fully stipulated to the facts in this case. We find the facts to be stated in their stipulation of facts and accompanying joint exhibits. Respondent timely issued a notice of deficiency on April 16, 1982, pursuant to a series of agreements between the parties to extend the period of limitations on assessment.At the time they filed their petition, petitioners' residence was in Plainview, New York. During 1974, 1975, and 1976, petitioner was employed by the Board of Education of the City of New York as a custodial engineer at Far Rockaway High School in Queens, New York. Far Rockaway High School had a high-pressure boiler heating system. From 1974 through 1976, petitioner was the *557 only certified high-pressure custodial engineer at Far Rockaway High School. He served as a supervisor and employer of high-pressure custodial engineer trainees, and was able to certify their hours of work experience. To become certified as a custodial engineer, a trainee was required to receive a specified number of hours of training (over 2,000) with a certified high-pressure custodial engineer. The Board of Education paid petitioner an allowance based on the characteristics and needs of his school. Petitioner, who was required to hire employees to assist him in the performance of his custodial duties, paid his employees from this allowance. Petitioner withheld from employees' gross wages amounts for payment of income tax, social security tax, and disability insurance, thereby leaving a net wage to be paid to employees. Petitioner remitted the withheld tax to the Board of Education, which transmitted these amounts to the appropriate taxing authority as petitioner's agent. Custodial engineers, including petitioner, were required to make regular reports to the Board of Education of all payroll and other expenses incurred. An agreement between the Board of Education and the *558 Custodians Union placed a $31,000 limit on the amount of compensation a custodian could retain for his personal services. After payment of expenses necessary to maintain the school, the custodian was required to return amounts in excess of the $31,000 limit to the Board of Education. During the years 1974, 1975, and 1976, the following individuals were on the payroll of petitioner as trainees for the position of custodial engineer: Name
Period of Employment
Joseph Grima
Jan. 10, 1974 - May 18, 1975
Douglas Mendez
Jan. 10, 1974 - Apr. 8, 1975
Henry Schwint
Nov. 2, 1974 - Apr. 29, 1976
Patrick McDonald
Apr. 12, 1975 - Apr. 25, 1976
Charles Gambino
May 20, 1975 - Apr. 27, 1976
Arcimino Amalfitano
Nov. 29, 1975 - Apr. 11, 1976
Although the above individuals were listed as employees on the payroll records of Far Rockaway High School and were certified by petitioner as custodial trainees to the Board of Education, they did no work or worked only a small percentage of their listed hours. During the years 1974 through 1976, petitioner charged and received from the Board of Education the amount of gross wages commensurate with the fictitious hours purportedly *559 worked by the six individuals. In exchange for certifying that the trainees had worked hours applicable towards qualifying as high-pressure custodial engineers, petitioner received the employees' net wages (gross wages less amounts withheld for taxes). Amounts purportedly paid by petitioner to employees were, in fact, never paid, or were paid and then returned to petitioner. For 1974, 1975, and 1976, the Board of Education sent to Amalfitano, Gambino, Grima, McDonald, Mendez, and Schwint W-2 forms that showed their income from the wages reportedly paid to them. These six individuals reported on their own individual income tax returns for 1974, 1975, and 1976 the amount of wages contained in their W-2 statements, notwithstanding the fact that they did not retain the monies listed as wages. The trainees claimed and were given credit on their income tax returns for amounts withheld from their wages for income taxes and paid by the Board of Education to respondent. Petitioners reported on their income tax returns for 1974, 1975, and 1976 the gross amount of compensation petitioner received from the Board of Education. They claimed deductions for the gross amount of wages allegedly *560 paid to employees. Petitioners' income tax returns did not reflect that petitioner retained wages for or received amounts from the trainees as follows: Name
1974
1975
1976
Total
Arcimino Amalfitano
$ 0
$ 814.98
$2,470.53
$3,285.51
Charles Gambino
0
5,613.23
2,727.33
8,340.56
Joseph Grima
[3] 6,708.20
3,312.39
0
10,020.69
Patrick McDonald
0
5,419.94
2,697.39
8,117.33
Douglas Mendez
[4] 7,368.28
2,148.23
0
9,516.51
Henry Schwint
839.21
8,063.87
2,727.33
11,630.41
Total
$14,915.69
$25,372.64
$10,622.58
$50,911.01
Petitioner was indicted by the State of New York on December 13, 1977, on seven counts of grand larceny in the second degree, three counts of falsifying business records in the first degree, and one count of official misconduct. On May 11, 1978, he was found guilty on all counts. Petitioner was sentenced on June 21, 1978, to a term of imprisonment not to exceed four years, a $50,000 fine, and was ordered to make restitution to the Board of Education in the *561 amount of $51,000. A state appellate court vacated the provision of the sentence that imposed on petitioner the duty to make restitution, but otherwise affirmed the conviction in all respects. In the notice of deficiency, respondent disallowed petitioners' claimed deductions for wages paid to employees by $14,916 for 1974, $25,373 for 1975, and $10,623 for 1976, [5] on the grounds that these amounts were not (1) ordinary and necessary business expenses, (2) paid or incurred in carrying on a trade or business, or (3) paid or incurred for the purpose designated. In the alternative, respondent asserted that if the above amounts qualified as allowable deductions, then petitioners had unreported income from kickbacks in those amounts. *562 Petitioners have stipulated that the aforementioned amounts are not allowable deductions and represent unreported taxable income for the respective years involved. [6] Petitioners, however, claim certain amounts as credits against the income tax deficiencies determined by respondent. Unless we find that they are entitled to the credits they claim, we must hold that the income tax deficiencies determined by respondent are correct. Petitioners argue that they are entitled to claim credits against their 1974, 1975, and 1976 personal income tax liabilities for (1) Federal *563 income tax, and (2) FICA tax withheld by petitioner from the wages of the six employees who participated in the kickback scheme; and for (3) matching contributions of FICA tax. [7] Their arguments are not supported by either statute or case law. [8] We hold that respondent was carrect in determining deficiencies in the amounts asserted. [9] There is no reason to decide whether the deficiencies are due to an overstatement of deductions or an understatement of gross income. *564 Section 31(a) [10] provides that the recipient of income is allowed a credit for the amount withheld for income tax. "For the purpose of the credit, the recipient of the income is the person subject to tax imposed under subtitle A upon the wages from which the tax was withheld." Sec. 1.31-1(a), Income Tax Regs. There is no authority that individuals who pay wages are entitled to this credit. As for the credits that petitioners claim for FICA taxes withheld from the trainees' wages and for matching contributions of FICA tax, we note that outside of section 31(b) [11] the Code does not authorize the crediting of social security tax payments. Further, the Tax Court's jurisdiction over employment tax issues is extremely limited. See Chatterji v. Commissioner,54 T.C. 1402 (1970). Petitioners do not assert that they qualify *565 for credits under section 31(b), which applies only to individuals who receive wages from more than one employer. We therefore are unable to give petitioners credit for withheld FICA taxes or matching contributions of FICA tax payments. Petitioners contend that they are entitled to credits under the doctrine of equitable recoupment. [12] The Tax Court lacks jurisdiction to consider this issue. See Commissioner v. Gooch Co.,320 U.S. 418 (1943); Continental Equities, Inc. v. Commissioner,551 F.2d 74, 84 (5th Cir. 1977), affg. in part and reversing in part a memorandum Opinion of this Court. [13]
*566 We next consider whether respondent's determination of additions to tax under section 6653(b) for fraud is proper. Section 6653(b) provides for a 50-percent addition to tax if any part of an underpayment is due to fraud. To establish fraud, respondent must show that the taxpayer acted with the specific intent to evade a tax believed to be owing. Wilson v. Commissioner,76 T.C. 623, 634 (1981), Supplemental Opinion, 77 T.C. 324 (1981). The burden of proving fraud is on respondent, who can do so by offering clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure.
Respondent argues that petitioners' failure to pay tax on illegally retained or received amounts was part of a scheme to fraudulently evade taxes. Petitioners, on the other hand, maintain that the facts of the instant case are not convincing evidence of fraud. We agree with respondent and hold that respondent was correct in determining additions to tax under section 6653(b) for petitioner's tax years 1974, 1975, and 1976. The existence of fraud is a question of fact that is decided from a consideration of the entire record. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980). *567 Fraud must be found separately for each taxable year at issue in order for the addition to tax for that year to be upheld. Professional Services v. Commissioner,79 T.C. 888, 930 (1982). Repeated understatements of taxable income in successive years, coupled with other circumstances showing intent to conceal taxable income, present a basis from which fraud may be inferred. Vannaman v. Commissioner,54 T.C. 1011, 1018-1019 (1970). A fraudulent understatement of taxes can result from an overstatement of deductions as well as from an omission of income. Neaderland v. Commissioner,52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970), cert. denied 400 U.S. 827 (1970). During 1974, 1975, and 1976, petitioner received kickback payments from six of his employees. By failing to reflect the operation of the kickback plan on their tax returns, petitioners understated their taxable income for 1974, 1975, and 1976 in the respective amounts of $14,916, $25,373, and $10,623. [14] These understatements of taxable income support a finding of fraud for each of those years. See Vannaman v. Commissioner,supra at 1018-1019; *568 Neaderland v. Commissioner,supra at 540. Other evidence of petitioner's intent to evade tax is reflected by the circumstances of the understatement. Petitioner was convicted of various crimes relating to his transactions with the New York City Board of Education. While evidence that a taxpayer was attempting to defraud another in a business transaction may not be direct evidence of fraud with intent to evade tax * * *, the Court is entitled to consider such evidence along with other evidence in determining the intent of the taxpayer in doing certain acts, because it is a fair inference that a man who will misappropriate another's funds to his own use through misrepresentation and concealment will not hesitate to funds from the Government with intent to evade tax. McGee v. Commissioner,61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976). Further evidence of petitioner's intent is offered by the custodial compensation reports he submitted to *569 the Board of Education. These records contained false representations and were the basis for petitioner's conviction under New York law of falsifying business records in the first degree. Payments to the six trainees, which were deducted by petitioners, were based on the number of hours they worked as shown by the records. The inaccuracy of petitioner's records is a "significant indicia" of fraudulent intent. See Otsuki v. Commissioner,53 T.C. 96, 110 (1969). Petitioners assert, "[s]ince the Government from the outset had received the withholding taxes and FICA payments as to the six employees in question, the Government was never harmed." They argue therefore that the fraud addition is inappropriate. We disagree. The addition to tax for fraud is appropriate where, as here, public funds have been spent in investigating and uncovering tax evasion. See Kahr v. Commissioner,414 F.2d 621, 626 (2d Cir. 1969), affg. in part and reversing in part 48 T.C. 929 (1967). More directly, amounts received by employees and then paid for some purpose back to petitioner, may be income to both and fully taxable to both. See Meyers v. Commissioner,21 T.C. 331 (1953). *570 Once taxed, income may remain exempt from further taxation in the hands of the recipient, but is fully taxable again when it reenters the flow of commerce. Further, petitioner retained these unreported amounts for his own use while concealing this fact from the local and Federal government. To reflect the foregoing, Decision will be entered for the Respondent.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge Lapsley W. Hamblen, Jr., to Judge Joel Gerber↩ for disposition. 1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue. ↩
2. Any reference to "petitioner" will be to Robert Cappetta.↩
3. This amount is $125.88 less than the total of checks issued to Grima. ↩
4. This amount is $123.40 less than the total of checks issued to Mendez.↩
5. Petitioners claimed a deduction for medical expenses in 1976. Since the medical expense deduction varies inversely with adjusted gross income, respondent's determination that petitioners had unreported taxable income reduced the deduction allowable. Respondent proposed an adjustment of $319 for 1976 due to recalculation of the medical expense deduction; all other amounts determined as deficiencies for 1974, 1975, and 1976 are attributed by respondent to amounts illegally retained or received.↩
6. After stipulating that the amounts illegally retained or received by petitioner represent unreported taxable income, petitioners on brief surprisingly argue that the six employees who participated with petitioner in the kickback scheme made gifts to him of their net wages. A gift proceeds from a "'detached and disinterested generosity' * * * 'out of affection, respect, admiration, charity or like impulses.'" [Citations omitted.] Commissioner v. Duberstein,363 U.S. 278, 285↩ (1960). Nothing in the record even remotely suggests that generosity motivated the employees' payments to petitioner.
7. We find no reference to matching FICA tax payments in the parties' stipulation and accompanying exhibits, although we have presumed such payments were made in deciding whether petitioners are entitled to a credit for them. ↩
8. Respondent allowed petitioners a deduction for income tax and FICA tax withheld by petitioner from the trainees' gross wages. Petitioners, who claim credits for these withheld amounts, are thus claiming credits for amounts that they previously deducted. Since matching contributions of FICA tax are deductible, it may be presumed that petitioners deducted these amounts as well, even though they now claim credit for them. ↩
9. In their "memorandum of law," petitioners for the first time assert that Seena Cappetta was an innocent spouse under sec. 6013(e) when she signed tax returns for the years 1974, 1975, and 1976. This issue was not raised in the petition. We agree with respondent that this issue has not been properly presented. This Court has repeatedly held that it will consider only those issues that have been pleaded. E.g., Markwardt v. Commissioner,64 T.C. 989, 997 (1975); Estate of Horvath v. Commissioner,59 T.C. 551, 556 (1973); Shomaker v. Commissioner,38 T.C. 192, 201 (1962). In any event, it appears that there is not sufficient evidence in the record to find that Seena Cappetta was an innocent spouse within the meaning of sec. 6013(e).↩
10. For the years at issue, sec. 31(a) provided in pertinent part: SEC. 31. TAX WITHHELD ON WAGES (a) Wage Withholding for Income Tax Purposes.-- (1) In General.--The amount withheld under section 3402 as tax on the wages of any individual shall be allowed to the recipient of the income as a credit against the tax imposed by this subtitle.↩
11. For the years at issue, sec. 31(b) provided that the Secretary could issue regulations concerning a credit for "special refunds" of social security tax. Sec. 6413(c) permits a credit where withholding by multiple employers has generated a "special refund."↩
12. Recoupment is an equitable doctrine that permits one party to reduce a claim against it by asserting claims in its favor related to the same transaction on which its adversary seeks judgment. H. Dubroff, The United States Tax Court, An Historical Analysis, 484 (1979).↩
13. For an extended discussion of equity jurisdiction and this Court, see Doner v. Commissioner,T.C. Memo. 1984-528↩.
14. Petitioners suggest that the understatement amounts are too small to support a finding of fraud. We do not agree.↩