LYLE W. AND SUE K. BRITT AND LAW OFFICE OF LYLE W. BRITT, CHARTERED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Britt v. Commissioner
Docket No. 663-87
United States Tax Court
T.C. Memo 1988-419; 1988 Tax Ct. Memo LEXIS 437; 56 T.C.M. (CCH) 56; T.C.M. (RIA) 88419; September 6, 1988
*437 After receiving an extension of time within which to file, petitioner prepared a 1983 joint Federal income tax return on behalf of himself and his wife shortly before the August 15, 1984, due date. The return was not received by respondent, who on August 20, 1985, filed a "dummy" return on petitioner's behalf which designated petitioner's filing status as married filing separately. Thereafter, petitioner tendered a joint return to respondent which we ordered filed. Held: based on deemed admitted facts, sec. 6653 (b). Held further: the purported return individually is not a valid return and not a separate return for purposes of sec. 6013(b). Held further: petitioner is entitled to elect to file a joint return under sec. 6013(b)(1). Lyle W. Britt, pro se. Juandell D. Glass, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By three separate notices of deficiency, each dated October 7, 1986, respondent determined deficiencies in and additions to petitioners' Federal income taxes for the years and in the amounts as follows: LYLE W. BRITT
Additions to Tax
Section [1] *438 Section
Section
Section
Year
Deficiency
6653(b)(1)
6653(b)(2)
6654
6661
1983
$ 34,357
$ 17,178 50% of interest
$ 2,103
$ 3,436 due on $ 34,357
LYLE W. AND SUE K. BRITT
Additions to Tax
Section
Section
Section
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661
1981
$ 10,857
$ 5,428 --
--
1982
6,092
3,046 50% of interest
$ 609 due on $ 6,092
LYLE W. BRITT CHARTERED
Additions to Tax
Section
Section
Year
Deficiency
6653(b)(1)
6653(b)(2)
1981
$ 3,613.73
$ 1,806.87 --
1982
2,677.42
1,338.71 50% of interest due on $ 3,677.42
1983
8,670.05
4,335.02 50% of interest due on $ 8,670.05
Petitioners, who have been most uncooperative in all their dealings with respondent, were not permitted to present evidence concerning corporate expenditures on behalf of the individual petitioners, as facts pertaining to these matters were deemed admitted pursuant to Rule 90(c). [2] Petitioners were however allowed to present evidence pertaining to whether they filed a joint 1983 Federal income tax return and whether a 1969 Jaguar automobile was received by Lyle Britt in 1983 as payment for services. Accordingly, requests for admissions concerning these items are not deemed admitted. [3] Respondent has since *439 conceded the issue regarding the automobile. The remaining issues are whether petitioners are liable for an addition to tax for fraud under section 6653(b) and whether petitioners' 1983 Federal income tax liability is to be computed on the basis of the rates applicable to a husband and wife filing a joint return. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by this reference. Additionally, some of the facts have been deemed admitted pursuant to Rule 90(c). Respondent's request for admissions is incorporated herein by reference. At the time their petitions were filed, the individual petitioners [4] *440 were residents of Derby, Kansas, and Lyle W. Britt, Chartered (Chartered), had its principal place of business in Wichita, Kansas. Petitioner filed timely joint Federal income tax returns with his wife for the years 1981 and 1982. Chartered filed timely Federal income tax returns for all years at issue. Chartered is wholly owned and controlled by petitioner, who practiced law through it as a sole practitioner. Petitioner supervised the maintenance of the corporate books and records and also the preparation and filing of the corporate tax returns. He personally prepared the personal income tax returns for himself and his wife. At various times during the years in issue, Chartered paid petitioner's FICA taxes, deducting those payments as both business expenses and petitioner's salary. Chartered also paid part or all of the Federal, state, local, and personal property taxes of petitioner and his wife for those years. Finally, Chartered paid for many of the personal expenses of petitioner and his wife. In many cases, Chartered took deductions for these expenditures, although they were not reflected on petitioner's Form W-2, nor did he otherwise report those sums as income. These expenditures, as well as whether they were paid from Chartered's operating or trust account, are set forth with more specificity in Appendix A. On April 14, 1984, petitioner *441 and his wife filed an application for an automatic extension of time within which to file their 1983 Federal income tax return. That request for extension showed no taxes to be due. In the few days before August 15, 1984, when the automatic extension was to expire, petitioner prepared a 1983 joint Federal income tax return for himself and his wife which they both duly executed. Petitioner placed the return in an envelope provided by the Internal Revenue Service which accompanied petitioner's Form 1040 packet. Petitioner then took the return to his office where the return was mailed along with the regular office mail. An audit of petitioner's 1983 tax year was begun on November 30, 1984, by revenue agent Steven J. Glotzdach, who was the first to inform petitioner that he had no 1983 Federal income tax return on file. Petitioner provided agent Glotzdach with an unsigned photocopy of the 1983 return which he had previously prepared, asking him to accept it then for filing. Agent Glotzdach refused to accept the return, telling petitioner that a return could not be filed once an audit had begun. Petitioner made no further effort to file his 1983 Federal income tax return until after *442 trial when, at the Court's suggestion, petitioner prepared, executed, [5] and delivered to respondent's counsel a 1983 joint Federal income tax return utilizing the married filing jointly rates. The return was based upon the income and deductions determined by respondent in the statutory notice modified only by respondent's concession with respect to the automobile. That return was ordered filed with respondent by this Court by order dated June 3, 1988, as amended on June 22, 1988. Respondent's Certificate of Official Record, made part of the record herein, reflects the filing on April 15, 1984, of petitioner's request for an extension of time within which to file a 1983 joint return. That Certificate also reflects respondent's filing of a substitute for return on August 20, 1985. That unsigned return consisted of only the front page of a Form 1040 containing petitioner's name and address, taxpayer identification number, and number of dependency exemptions, and designated his filing status as married filing separately. The Certificate does not reflect the filing of a joint return for 1983. OPINION The vast majority of facts describing *443 the transactions of Chartered and petitioner are based upon respondent's request for admissions which are deemed admitted under Rule 90(c). Respondent relies upon these deemed admitted facts in support of his determination that petitioners are liable for the addition to tax for fraud pursuant to section 6653(b); respondent bears the burden of proof on this issue. Sec. 7454(a); Rule 142(b). We held in Marshall v. Commissioner,85 T.C. 267 (1985), that when facts deemed admitted under Rule 90(c) are sufficient to carry the burden of proof imposed upon respondent, no further evidence need be introduced.[6]
We find that petitioner diverted corporate funds for his personal use, with Chartered in many instances claiming deductions under section 162. However, petitioner never reported the expenditures as income, nor were they reflected on his W-2 forms. In Meyers v. Commissioner,21 T.C. 331 (1953), we sustained respondent's determination of fraud under similar circumstances. *444 Although the taxpayer in Meyers had entered a plea of guilty in criminal tax proceedings, we found the proof presented to us would have sustained respondent's determination even in absence of such a plea. In this regard, we stated that: It is sufficient to point out that the evidence discloses a plan of petitioner * * * to obtain earnings of the Corporate under the guise of corporate expenses and capital outlays, and not include the distributions in returns for tax purposes. The scheme and the effort made to conceal the actualities contain all of the essential earmarks of a determination to evade income taxes by false and fraudulent means.
Meyers v. Commissioner, supra at 348. Meyers is also instructive on the issue of the determination of fraud against Chartered. In that regard, we stated that: The plan, as conceived by petitioner, required participation by the corporation, which was no obstacle in view of his complete ownership of its stock * * *. The intent of the individuals under the circumstances is to be imputed to the Corporation. Auerbach Shoe Co.,21 T.C. 191. The amounts were deducted in the returns of the corporation as salary, with knowledge that no services had been *445 performed for the payments and that the deductions were nothing more than a detail in a general scheme to withdraw profits of the enterprise for the account of petitioner under the guise of legitimate operating expenses. Such action discloses fraudulent returns with intent to evade tax. Coast Carton Co.,3 T.C. 676, affd. 149 F.2d 739. [Meyers v. Commissioner, supra at 348-349.]
We therefore find petitioner and Chartered liable for an addition to tax under section 6653(b). We do not, however, find that Sue Britt shares in petitioner's and Chartered's liability for fraud. The complete control exercised by Britt over Chartered which is a persuasive element in Chartered's liability for the penalty makes it less likely that she "intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes." Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). While the deemed admissions contain some indicia of her acquiescence, they reveal that it was petitioner who had sole responsibility for the preparation of Chartered's tax returns and personally prepared those for himself and his wife. In the absence of evidence other than that *446 found in the request for admissions, respondent has not proven fraud on the part of Sue Britt by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Petitioner next contends that his testimony establishes that he and his wife filed a timely 1983 joint Federal income tax return by mail on or before the date on which their automatic extension expired in 1984. Respondent has no record of such a return being filed and argues that petitioner's testimony is insufficient to prove mailing. Further, respondent argues that he filed a separate return on petitioner's behalf pursuant to section 6020(b), and that since petitioner has filed a petition with this Court he is prohibited by section 6013(b) (2) (C) from now electing to file a joint return. Section 7502 provides procedures whereby timely mailing of a document required by any internal revenue law shall be considered timely filing. However, that section is inapplicable when, as here, the document is not delivered. Sec. 301.7502-1(d), Proced. & Admin. Regs. The risk of nondelivery rests upon petitioner, Walden v. Commissioner,90 T.C. 908 (1988). However, in a case not concerning section 7502, this Court has recognized a presumption *447 of filing based on oral proof of mailing, Mitchell Offset Plate Service Inc. v. Commissioner,53 T.C. 235 (1969). While the majority of the parties' effort at trial was directed toward this issue, we find that its resolution is not necessary in reaching our decision. Respondent did not determine an addition to tax pursuant to section 6651 for failure to file a timely return. [7] The date the return was filed is therefore irrelevant for that purpose. However, respondent did determine an addition to tax for fraud pursuant to section 6653(b) for 1983. That addition is imposed on any underpayment for that year. Section 6653(c) defines an underpayment as a deficiency defined in section 6211. However, in determining the amount of underpayment, the actual tax due is reduced by the tax shown on the return only if that return is timely filed, taking into account any extensions. Therefore, in the absence of a timely filed return, an underpayment is the amount of tax imposed (in this case by subtitle A of the Code). Sec. 301. 6653-1(c) (1) (ii), Proced. & Admin. Regs. If petitioner proves that he filed a timely 1983 joint return, the underpayment would be reduced by the amount of tax shown *448 on that return. However, an unsigned photocopy of the joint return which petitioner purportedly mailed to respondent shortly before August 1, 1984, and which petitioner tendered to agent Glotzdach upon audit, was a stipulated exhibit and shows no tax due. Therefore, even were we to assume that return to have been timely filed, the amount of the underpayment would be unchanged. Neither does petitioner's assertion that he is entitled to utilize the married filing jointly rates require us to determine whether petitioner filed a timely 1983 joint return. In Phillips v. Commissioner,86 T.C. 433, 440 (1986), affd. in part and revd. in part [Illegible Word] 51 F.2d 1492 (D.C. Cir. 1988) (Phillips I), we held that a "dummy return such as the one filed by respondent in this case does not constitute a separate return for purposes of section 6013(b). [8] We stated that "Where as here, no return was filed prior to the return on which joint return status is claimed, the limitations of paragraph (2) of subsection (b) of *449 section 6013 are inapplicable." We also noted that the legislative history did not suggest that an election to file a joint return where none had been filed previously was precluded by section 6013(b) (2). A different result is not required by the Tenth Circuit's holding in Smalldrige v. Commissioner,804 F.2d 125 (10th Cir. 1986), in which the Court found that the commissioner filed a valid return on behalf of the taxpayer pursuant to section 6020(b). The "return" filed by respondent on petitioner's behalf contains no more than petitioner's name, address, taxpayer identification number, number of dependency exemptions, and his filing status, which respondent designated as married filing separately. That document does not contain sufficient data to calculate tax liability. See Beard v. Commissioner,82 T.C. 766, 777 (1984), affd. per curiam 793 F.2d 139 (6th Cir. 1986). In this case the return filed by respondent for petitioner was incomplete and was unsigned. It consisted of the front page of a Form 1040, and contained only petitioner's name, address, identification number, number of dependency exemptions, and designated *450 filing status as married filing separately. Such a document does not comply with section 6020(b) and does not constitute a valid return. Phillips v. Commissioner,86 T.C. 433 (1986)Phillips I). Thus, Smalldrige v. Commissioner is not in point. That case is "based upon the conclusion that respondent filed valid returns pursuant to section 6020(b)." Phillips v. Commissioner,88 T.C. 529, 534 n. 8 (1988). Since no separate return was filed for purposes of section 6013 (b) (1), we hold that petitioner is entitled to file a joint Federal income tax return with his wife for 1983, and that the return filed pursuant to this Court's order of June 3, 1988, as amended, is such a return. Decision will be entered under Rule 155.
APPENDIX A On November 16, 1987, respondent filed with the Court his request for admissions as follows: 1. During the taxable years 1981 , 1982 and 1983, Britt was a practicing attorney who practiced for his wholly-owned and controlled corporation, Lyle W. Britt Chartered, of which he was the president and sole officer. 2. Britt was the sole attorney practicing for Chartered during the years 1981 through 1983 (hereafter years in issue). 3. In his capacity as president *451 and sole officer of Chartered, Britt was solely and directly responsible for and controlled the day-to-day operations of Chartered. 4. Britt personally directed, controlled and supervised the employees of Chartered in the maintenance of the corporations books and records during the years in issue. 5. Britt prepared or caused to be prepared Chartered's income tax returns for each of the years in issue, and Britt signed and filed or caused those returns to be filed for each of the years in issue. 6. During the years in issue, Chartered was engaged in the business of providing legal services for which income was received. 7. Britt personally maintained the books and records of Lyle and Sue Britt for the taxable years 1981 and 1982. 8. Britt personally prepared the 1981 and 1982 income tax returns of Lyle and Sue Britt, which returns were examined, signed and filed by them for those years. 9. Britt was personally responsible for maintaining books and records of his income, deductions and liability for taxes for the taxable year 1983. * * * 11. During the years 1981, 1982 and 1983, Chartered paid Britt's F.I.C.A. taxes in the amounts of $ 1,975.05, $ 2,171.80 and $ 2,3091.90, *452 respectively, without deducting those from his salary and without including those amounts as income on Britt's Forms W-2. 12. In 1982 and 1983, Chartered paid from its account no. XX2763 the personal federal income tax liabilities of the Britts for the taxable years 1981 and 1982 in the amounts of $ 1,551.00 and $ 4,146.00, respectively, and those payments were not included in the income shown on Britt's Forms W-2 or reported on the income tax returns for the respective years. 13. Payments were made to GMAC on Britt's Camaro from Chartered's account no. XX2763 in 1981 and 1982 in the amounts of $ 1,857.08 and $ 1,370.90, respectively. 14. In 1982, payments were made from Chartered's account no. XX2763 for (a) the Britt's income tax penalties for 1981 in the amount of $ 119.15, (b) the Britt's Kansas income tax liability for the year 1981 in the amount of $ 297.56, (c) personal property tax, tag and penalty for Britt's Camaro in the amount of $ 209.25, and (d) on Britt's loan no. 108549 at Valley State Bank in a total amount of $ 5,959.74. 15. In 1983, payments were made from Chartered's account no. XX2763 for the items and amounts as follows: Item
Amount
a. Britt's Kansas Income Tax for 1982
$   471.26
b. Jaguar insurance
$    63.23
c. Sue Britt travel (check no. 2165)
$   608.00
d. IRA for 1982
$ 2,250.00
e. Carl Heidolph-home improvements
(check nos. 1911 and 1887)
$ 1,100.00
f. Valley State Bank -- Loan Nos.
1085406 and 1085417
$ 1,730.00
*453 16. In 1981, payments were made from Chartered's Trust Account no. XX3174 as follows: Item
Amount
a. Britt (check no. 319)
$ 1,000.00
b. Jewelry-Sue Britt (check no. 357)
$ 1,000.00
c. Britt (check no. 358)
$ 1,100.00
17. In 1983, the following payments were made from Chartered's Trust Account No. XX3174 on Valley State Bank loans nos. XXX5403 and XXX5416 of which $ 1,740.04 and $ 1,313.00, respectively, represented personal loan payments. 18. In 1983, the payment of $ 6,456.32 was made to Wichita State Bank on a loan of World of Rodeo from Chartered's Trust account no. XX3174. 19. World of Rodeo is wholly-owned by Lyle and Sue Britt. 20. Britt reduced an invoice to the Britts from Mike Turpin for $ 1,016.00 by $ 350.00 for professional services in 1982. 21. During 1981, 1982 and 1983, unidentified deposits were made to the Britt's personal checking account no. 331449 at Valley State Bank in the total amounts of $ 2,750.05, $ 1,320.68 and $ 3,911.83, respectively, as is more specifically set out by date and amount on Exhibit A. 22. In 1983, the Britts made currency deposits of $ 870.00 and $ 4,100.00 to their Valley State Bank account no. XX1449. 23. During 1981, 1982 and 1983, *454 Chartered paid medical expenses for the Britts in the total amounts of $ 2,047.64, $ 2,457.23 and $ 3,476.85, respectively. 24. Chartered did not pay medical expenses for other full time employees, other than premiums for medical insurance. 25. On June 22, 1983, currency in the amount of $ 5,500.00 was deposited to the bank account of World of Rodeo. * * * 27. In 1983, Britt expended $ 15,714.47 more than he had available from known and reported sources of income as shown on Exhibit A-1 to the statutory notice of deficiency. 28. In 1983, Britt received wages from Chartered in the amount of $ 52,161.60. 29. Title to the 1969 Jaguar referred to in paragraph 26 above was applied for in April 1984 in the name of Sue Britt and was conveyed from Mike Rogge on July 5, 1983. 30. Rodeo Publishing Corporation, Inc., did not file a Federal income tax return, Form 1120-S, for the taxable year 1983. 31. In 1983, Rodeo Publishing Corporation, Inc., sustained an ordinary loss due to business operations of $ 22,915.63 and Schedule D losses of $ 46,623.07. 32. Lyle and Sue Britt claimed a $ 28,901.00 medical deduction on their Form 1040 for 1980 for costs of a pool, spa (jacuzzi) and *455 pool house, which amount included the excess of the Britts' claimed cost of $ 59,126.00 over their claimed increase in the fair market value of the property of $ 29,800.00. 33. In 1981, the Britts claimed the following items as medical expense deductions and those same items were claimed by the Britts as 1980 medical expense deductions. Item
Amount
a. Superior Plumbing
$   606.40
b. Current Electric
$   104.88
c. Aggregate Sand
$   403.87
d. Metz Lumber
$    80.02
e. Jack's Tile
$ 2,045.00
f. Mike's Air & Heating
$   412.00
Total
$ 3,652.17
34. In 1981, the Britts claimed payments to Executive Pool of $ 2,000.00 and $ 2,720.00 as medical expense deductions and also claimed those amounts as part of the 1980 medical expense deductions. 35. The Britts claimed the $ 1,133.00 cost of a spa/hot tub heater on their 1981 return as a casualty loss and also claimed that amount as a medical expense, and they were reimbursed $ 883.00 by the insurance company for this spa/hot tub heater. 36. In 1981, the Britts claimed additional medical expenses deductions in the amounts of $ 3,573.94 and $ 8,998.20 as more specifically set forth at items 1 and 2 of Exhibit B. 37. In 1982, Chartered received repayments *456 of client advances which had been previously deducted as business expenses in the amount of $ 2,469.70 which amount was not recorded on the corporate records as income or as a deduction of business expenses. 38. In 1982 and 1983, Chartered deducted as business tax expense corporate payments of personal income tax and property tax of Britt. 39. During the years 1981, 1982 and 1983, Chartered deducted as business tax expenses payments of trust fund taxes for F.I.C.A., state income tax and Federal income tax and also deducted those same amounts as expenses for salaries or wages. 40. Chartered claimed an independent contractor expense of $ 1,020.00 on its 1983 return and also claimed the same payment as a janitor expense on its books and 1983 return. 41. Chartered claimed the full cost of an automobile acquisition as a business expense on its 1981 return. 42. In 1982 and 1983, Chartered claimed loan repayments in the amounts of $ 5,959.74 and $ 3,458.99 as corporate business expenses. 43. In 1983, Chartered paid $ 300.00 to Jeff DeHon and $ 160.00 to Bill Buck for services in the adoption of Adrienne by the Britts and charged those payments off as corporate business expenses. *457 44. In 1982, Chartered deducted a $ 1,000.00 loan to James Britt, Britt's father, as a business expense. 45. The Britts owned a 1982 Chevy Van which was used 100 percent for personal use. 46. Chartered claimed equipment expense of $ 4,834.42 in 1982, but has not produced any documentary evidence to substantiate this expenditure, its nature or purpose. 47. In 1981, Chartered paid $ 6,357.08 for two automobiles, consisting of $ 4,500.00 to Miller for a 1977 Corvette and $ 1,857.08 to GMAC for a 1981 Camaro, all of which was deducted as corporate expenses. 48. During the years 1981, 1982 and 1983, Chartered had a medical reimbursement plan; however, the employees other than Britt were not notified of that and employees other than Britt were not reimbursed for any medical, drug or doctors cost. 49. In 1983, Chartered deducted a $ 700.00 payment to Carl Heidolph as a corporate legal expense; however, the expense was for home improvement work on Britts' personal residence. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. 2. Respondent's request for admissions is attached to this opinion as Appendix A. ↩
3. These requests are not included in Appendix A. ↩
4. Sue Britt is not a petitioner with respect to 1983, having been issued no statutory notice of deficiency for that year. For convenience all further references to petitioner are to Lyle Britt. 5. Petitioner's wife also executed this return. ↩
6. See also Doncaster v. Commissioner,77 T.C. 334↩ (1981), where facts in respondent's answer deemed admitted under Rule 37(c) were held to be sufficient to carry respondent's burden regarding the addition to tax for fraud. 7. Pursuant to section 301.6653-1(b) (2) (i)↩, Proced. & Admin. Regs., an addition to tax for late filing is not assessed in cases where an addition to tax for fraud is assessed. 8. On appeal, respondent abandoned his argument to the contrary. ↩